Fashion Hosiery Shops, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Matilda Kurta, Respondents.

Argued May 9, 1980, before Judges ROGERS, BLATT and WILLIAMS, JR., sitting as a panel of three.

*Linton L. Moyer, Thomson, Rhodes & Grigsby,* for petitioner.

*Samuel J. Goldstein,* for respondent, Matilda Kurta.

OPINION BY JUDGE WILLIAMS, JR., December 19, 1980:

This is an appeal by employer Fashion Hosiery Shops (Fashion) from an order of the Workmen's

Compensation Appeal Board (Board) that affirmed a referee's award of total disability compensation to claimant Matilda Kurta. The central issue is whether the place and occasion of the claimant's injury make it compensable under the "premises" provisions of Section 301(c) of The Pennsylvania Workmen's Compensation Act.[1]

Claimant Kurta was employed as manager and salesperson at Fashion's hosiery and lingerie shop on Fifth Avenue in McKeesport, Pennsylvania. The shop was located in leased space on the first floor of a multi-tenant commercial building situated on the corner of Fifth Avenue and Locust Street. There were several other stores on the first floor.

The building itself had two main, common entranceways, one on Fifth Avenue and the other on Locust Street. Those entrances gave access to the main first floor hallways. Fashion's first floor shop had its own separate front entrance, on Fifth Avenue, by which people could enter the shop directly from that street. However, the shop also had a rear door that allowed entry from one of the common hallways on the first floor of the building. That hallway and the rear door of Fashion's shop were accessible by entering the building through either of the two common entranceways.

On the morning of January 9, 1976, Matilda Kurta approached the building en route to work. She elected to use the common entrance on Locust Street, and had descended the two or three steps leading to that entrance. As she started across the terrazzo marble in front of the door she slipped and fell, due to the icy condition of the marble.

---

[1] More technically, Section 301(c)(1) of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411(1). Section 301(c) was renumbered as 301(c)(1) by Section 2 of the Act of October 17, 1972, P.L. 930.

The weather that morning was described by the claimant as being inclement. She stated there was much snow and ice, and that the temperature was below freezing. She also stated that she approached the building on its Locust Street side because of the location of her hairdresser, with whom she had an appointment earlier. According to the claimant, the terrazzo marble upon which she fell was "a sheet of ice."

As a result of her fall, the claimant sustained a subcapital fracture of the left femur; and the referee found that the injury rendered her totally disabled. The referee also found that the owner of the building, the lessor, was responsible for the care and maintenance of the area where the claimant's fall occurred. What is more significant for purposes of the instant case, is the referee's conclusion that the place of Kurta's fall made the injury compensable under the "premises" provisions of Section 301(c) of the Workmen's Compensation Act. When the Board affirmed the referee, Fashion appealed to this Court.

In contesting the award, Fashion's principal argument is that the claimant's injury did not occur on its "premises." In that regard Fashion asserts that it neither owned, leased, controlled, maintained nor used the entranceway where the claimant fell. Further, Fashion contends that the entranceway was not "provided" by it, was not the "usual" means of ingress to the shop, and was not an area the claimant *had* to cross to enter the shop. In sum, appellant Fashion argues that this case merely involves an "on-the-way-to-work" injury, and that such is not an injury arising in the course of employment under Section 301(c) of the Act.

Section 301(c) of the Workmen's Compensation Act, in defining the term "injury arising in the course of employment," provides in relevant part that the term:

> [S]hall include all injuries caused by the condition of the premises . . . , sustained by the employe, who, . . . is injured upon the premises occupied by or under the control of the employer, *or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.* (Emphasis added.)

Preliminarily, it must be observed that the "premises" provisions of Section 301(c) after the 1972 amendments to the Workmen's Compensation Act are identical in language and substance to the "premises" provisions of Section 301(c) that preceded the 1972 amendments. Although those amendments wrought significant change in the Section, its pre-existing "premises" provisions were left intact. Therefore, in applying 301(c) to the case at bar, we cannot ignore the pre-1972 decisional law under that Section. In the 1978 case of *Epler v. North American Rockwell Corp.,* 482 Pa. 391, 393 A.2d 1163 (1978), the Supreme Court of Pennsylvania in delineating the meaning of "employer's premises", relied on approximately twelve decisions that preceded the 1972 amendments.

In one of the relatively early cases under the "premises" provisions of 301(c), our state Supreme Court in *Black v. Herman,* 297 Pa. 230, 146 A. 550 (1929), declared that "[an] injury sustained by a servant in attempting to reach his place of work through an entrance way to the master's premises, which the latter has provided for the former's use, is compensable." *Id.* at 232, 146 A. at 550. In that case the employer leased the fourth floor of a building. The fourth floor was reached by an entrance platform and a flight of stairs. The employee's injury occurred when he slipped on the entrance platform while on his way to work.

In affirming the award of compensation, the Supreme Court in *Black v. Herman* stated that the employer's tenancy included the entrance platform and stairs so far as necessary to afford him and his employees free ingress and egress to and from the work area. The Court held that the *entrance platform,* where the injury occurred, was part of the employer's premises and that the case bore no analogy to an injury sustained on the public street. A significant feature of the decision in *Black v. Herman* is that the Court distinguished an injury on the *entranceway* of a building from an injury on a *public street.*[2]

The case of *DiCicco v. Downs Carpet Co.,* 137 Pa. Superior Ct. 483, 9 A.2d 183 (1939), also involved an employer who leased space in a multi-tenant building. The employer leased the fourth floor. A passenger elevator and a front stairway provided for ingress and egress to and from the fourth and other floors of the building. There was *also a rear stairway* which led from the fourth and other floors to a rear street. The tenants on the second and third floors could use the rear stairway for both ingress and egress; however, the tenant on the fourth floor, the employer, could use it only for egress. The employee's injury occurred while he was descending the rear stairs, at a point between the fourth and third floor, as he was leaving work for the day. The referee and the Board found that the rear stairway constituted part of the tenant-employer's "premises" under 301(c) and awarded compensation.

In *DiCicco* the Superior Court affirmed the award, and stated the applicable rule thus: an accidental injury sustained by an employee while going to or from

[2] The result reached by this Court in *Workmen's Compensation Appeal Board v. Levy,* 23 Pa. Commonwealth Ct. 658, 354 A.2d 7 (1976), involving a *sidewalk* injury, can be viewed in terms of that dichotomy.

his work in his employer's place of business, in an elevator or on a stairway provided for the former's use, is compensable. The Court stated further that "the rear stairway was as much a part of the premises of defendant as the front stairway." *Id.* at 486, 9 A.2d at 184. As the Court pointed out, the availability of the front stairway and elevator did not alter the fact that the rear stairway was *a way provided* for leaving the employer's leased space, and its use was not prohibited.

Another dimension in the meaning of "premises" under 301(c) was added by *Dougherty v. Bernstein & Son,* 160 Pa. Superior Ct. 587, 52 A.2d 370 (1947). In that case the employer was also a fourth floor tenant. But in *Dougherty* the employee was injured outside the landlord's building, while coming to work across a "reserved" piece of ground that provided the only access to the building itself. The Court held that the place of injury was part of the tenant-employer's premises for purposes of Section 301(c) of the Act.

In the *Black, DiCicco* and *Dougherty* cases, the claimant was injured on an entranceway or exit, which, though leading to or from the actual place of work, was not owned or controlled by the employer.[3] In each of those cases the employer was but a tenant-occupant of space in a building owned by another.

Although the case of *Lints v. Delaware Ribbon Manufacturers, Inc.,* 173 Pa. Superior Ct. 540, 98 A.2d 643 (1953), resulted in a denial of compensation, the Superior Court summarized the principles upon which an entrance or exit is to be deemed a part of the em-

---

[3] Those three cases are distinguishable from *Eberle v. Union Dental Co.,* 390 Pa. 112, 134 A.2d 559 (1957). In *Eberle* the employee *had left work for the day and was on the public street* when the injury occurred. Although that employee slipped on a part of the sidewalk over which the employer may have had an easement, the employee was not using it to serve any purpose of the employer.

ployer's premises for purposes of Section 301(c) of the Act. An entrance or exit, whether located on property under the control of the employer or not, is a part of the employer's "premises" if: (1) the entrance or exit is *provided* by the employer for his employees; or (2) such entrance or exit is *available and intended for use;* or (3) is the *usual means* of ingress and egress within the landlord's building, to the tenant-employer's place of business; or (4) where the employee *must* traverse property of the employer or employer's landlord to reach or leave work. *Id.* at 544, 98 A.2d at 645.

We turn now to the 1978 decision of the Supreme Court of Pennsylvania in the case of *Epler v. North American Rockwell Corp.*, already referred to in this opinion. In *Epler* the Court upheld an award for the death of an employee killed while crossing a public highway that divided the employer's plant from the employer's parking lot. The Court held that the highway was a part of the employer's "premises" under 301(c), because it was necessary to traverse the highway in going to and from the parking lot, which was an integral part of the employer's facility.

In so holding, the Supreme Court in *Epler* reviewed much of the decisional law under the "premises rule" and declared certain principles that have direct bearing on the case at bar. For example, based on *Lints v. Delaware Ribbon Manufacturers, Inc.*, the Supreme Court stated that "it should not be significant that a portion of the area designated by the employer for egress or ingress is not located upon land owned by the employer." 482 Pa. at 399, 393 A.2d at 1166.

What is perhaps more important is the Court's further statement in *Epler* that:

[T]he *critical factor is not the employer's title to or control over the area,* but rather the fact that he had caused the area to be used by his

employees in performance of their assigned tasks. *The basis for the compensation is that the employee was in the area where the injury was sustained directly because of his employment.* (Emphasis added.)

*Id.* at 399, 393 A.2d at 1167.

The Supreme Court also pointed out that the Workmen's Compensation Act is not based on the wrongdoing or negligence of the employer but on the employment relationship; and, therefore, there is no need to require a finding of ownership or control. In that regard, the Supreme Court of Pennsylvania in *Epler* expressly rejected the restrictive reasoning applied by the Commonwealth Court in *North American Rockwell Corp. v. Workmen's Compensation Appeal Board,* 21 Pa. Commonwealth Ct. 437, 346 A.2d 379 (1975).[4]

Returning to the facts of the instant case, the claimant was injured on the marble surface in front of one of the common doorways of the lessor's building, while attempting to use that entrance to reach the place of her employer, a tenant therein, to take up her day's work. The marble area where the claimant fell was owned by the lessor, and was but a few feet from that common doorway.

The marble area was not part of a general, public sidewalk for travel *past* the building, but instead was a few steps below the sidewalk and served as a distinct approach to the doors the claimant was trying to enter when she fell. In short, the area of the fall was part of the Locust Street entranceway to the lessor's building. The marble area and its abutting doors led to a common hallway that further led to the rear entrance

---

[4] The *North American Rockwell* case was *Epler* before the Commonwealth Court. This Court embraced the reasoning that "premises" means property owned, leased, controlled or maintained by the employer.

to Fashion's first floor shop. It must be concluded, therefore, that the place of the claimant's injury was a way of ingress or entrance, on the lessor's premises, to the tenant-employer's place of business.[5]

Furthermore, in allowing its shop to be accessible by the rear door from the hallway, Fashion cannot validly argue that it did not intend the claimant to use the available common building entrances that led to the rear door. And, there is nothing in this case to indicate that the claimant was prohibited from using the common entranceways to the building. Nor can it be significant that the claimant was *not required* to use the entrance she selected: because she had the choice of *three ways* to her employer's shop and was not required to use any one of them to the exclusion of the others.

Given the relational nature of the area in question to the employer's place of business, it must be concluded that the claimant was injured on an entranceway that was available and intended for her use; and as such, it constituted part of the employer's premises, regardless of its not being owned or controlled by the employer. *Epler, supra; Lints, supra.* Nor does the availability of alternative entrances nullify that conclusion. *Each* of the three available and intended ways of ingress to Fashion's shop was a part of Fashion's "premises" for purposes of Section 301(c) of the Workmen's Compensation Act. *DiCicco, supra.* In terms of the *Epler* case, it can be said that claimant Matilda Kurta was in the area where the injury was sustained directly because of her employment, and that the employer at least induced her to use that area by making it a way of ingress to the place of work.

---

[5] In *Pineda v. Oliver B. Cannon & Son, Inc.*, 172 Pa. Superior Ct. 625, 93 A.2d 902 (1953), the Court held that the rule in *Black, DiCicco*, and *Dougherty* was not restricted to the "four walls of a building." *Id.* at 628, 93 A.2d at 903.

In passing, it is perhaps useful to compare and consider the decision of this Court in *Schofield v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 282, 395 A.2d 328 (1978). In that case we allowed compensation to an employee who was injured on the way to work when his car was struck by a train at a railroad crossing. The employer had an easement over the crossing; and it was the principal means of ingress to its plant. In the instant case, Fashion, as a tenant, had a right to use the entranceways and halls of the lessor's building, for purposes of ingress and egress. That right existed by virtue of the lease and by operation of law; and such a right is deemed to be appurtenant to the leasehold. *E.g., Weigand v. American Stores Co.,* 346 Pa. 253, 29 A.2d 484 (1943). In that light, the entranceway where claimant Kurta was injured could be viewed as a place in which the tenant-employer had rights appurtenant to its leasehold.

Because this is a workmen's compensation case, the employer's lack of fault or negligence relative to the injury is of no consequence. Compensation under the Act is not based on wrongdoing of the employer but on the employment relationship; and, thus, the employer's lack of ownership or control of the place of the injury is also of no consequence. *Epler, supra; Workmen's Compensation Appeal Board v. United States Steel Corp.,* 31 Pa. Commonwealth Ct. 329, 376 A.2d 271 (1977). If an employer's liability for workmen's compensation is occasioned by the fault of a third person, the employer may pursue its subrogation rights under the Act.

Having concluded that the claimant's injury occurred on her employer's "premises", we must also decide whether the Board correctly concluded that the claimant was "in the course of employment" when the injury occurred. Even though not actually engaged

in the employer's work, an employee will be considered to have suffered an injury "in the course of employment" if the injury occurred on the employer's "premises" at a reasonable time before or after the work period. *Fetzer v. Michrina,* 8 Pa. Commonwealth Ct. 273, 301 A.2d 924 (1973); *Wolsko v. American Bridge Co.,* 158 Pa. Superior Ct. 339, 44 A.2d 873 (1945).

The injury to the claimant in the instant case, Matilda Kurta, occurred between fifteen and thirty minutes of the time she was to begin work. Her evidence established that she was scheduled to begin work at 10:00 a.m. and her fall occurred between 9:30 a.m. and 9:45 a.m. She also testified that she usually arrived about 9:30 a.m., to prepare the shop for opening. In view of that evidence, we have no basis for disturbing the Board's conclusion that the occurrence of the injury bore a reasonable relationship to the time the claimant was to begin work. *See Wolsko, supra.*

For the reasons set forth, we affirm the order of the Board in this case.

## Order

And Now, this 19th day of December, 1980, the decision of the Workmen's Compensation Appeal Board, awarding compensation to Matilda Kurta, is hereby affirmed. Fashion Hosiery Shops and/or the American Mutual Liability Insurance Company, are hereby ordered to pay to the claimant compensation for total disability at the rate of $71.91 per week for the period beginning January 9, 1976, and continuing thereafter in accordance with the provisions of the Workmen's Compensation Act.

Fashion Hosiery Shops and/or the American Mutual Liability Insurance Company shall reimburse to Samuel J. Goldstein, Esquire, attorney for claimant, the reasonable costs of prosecution, incurred in the

amount of $381.80 as itemized in the referee's order of April 17, 1978.

Fashion Hosiery Shops and/or the American Mutual Liability Insurance Company shall pay all unpaid reasonable medical and hospital expenses resulting from the injury of January 9, 1976, and shall reimburse the claimant for all proper payments made by her on account of such expenses.

Interest shall be paid on all deferred payments in accordance with law.

Twenty percent (20%) of the payments payable to the claimant shall be charged against this award and paid directly to Samuel J. Goldstein, Esquire, attorney for claimant, as an attorney's fee, the balance of the award to be paid directly to the claimant.