# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric Hayes,                  :
              Petitioner     :
                                 :
         v.                    :    No. 1053 C.D. 2019
                                 :    Submitted: January 24, 2020
Workers' Compensation Appeal   :
Board (US Airways Inc.),        :
              Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**            **FILED: July 28, 2020**

Eric Hayes (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated July 30, 2019. The Board affirmed the order of a Workers' Compensation Judge (WCJ), denying Claimant's claim petition against US Airways, Inc. (Employer) based upon a finding that Claimant failed to prove that he was injured in the course and scope of his employment as required by Section 301(c)(1) of the Workers' Compensation Act (Act).[1] We now affirm.

Claimant worked for Employer as a customer service representative at Philadelphia International Airport (Airport). (Reproduced Record (R.R.) at 51a, 61a.) In order to get to work, Claimant would drive his own vehicle to the Airport

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

and would park in one of several parking lots. (*Id.* at 60a-61a.) Two of those parking lots—the Bartram Avenue lot and the Cargo City lot—are owned, operated, and maintained by the City of Philadelphia/Division of Aviation (DOA) and are designated for the use of all Airport employees free of charge. (*Id.* at 122a.) A public shuttle bus transports individuals who park at those designated lots to and from the Airport's terminals. (*Id.* at 53a, 62a.) Instead of parking at one of those designated lots, Claimant would often park at a third lot—the International Plaza lot—because, as Claimant explained, it is within walking distance of the Airport's Terminal A, where Claimant would clock in for work. (*Id.* at 53a.) The International Plaza lot is privately owned and is not affiliated with the Airport or designated for Airport employee parking. (*Id.* at 122a.)

On May 13, 2017, Claimant was walking from the International Plaza lot to report to work at the Airport when he tripped and fell, injuring his right elbow. (*Id.* at 52a, 56a.) The injury required surgery and prevented Claimant from working until July 11, 2017. (*Id.* at 58a.) On August 2, 2017, Claimant filed his claim petition, alleging that he sustained a right arm sprain and elbow fracture while working for Employer on May 13, 2017, and that he was disabled as a result thereof. (*Id.* at 2a-4a.) Employer filed an answer in which, as it clarified during an initial hearing before the WCJ, Employer denied that Claimant was injured in the course and scope of his employment with Employer. (*Id.* at 7a-9a.; Certified Record (C.R.), Item No. 11 at 4.)

In support of his claim petition, Claimant presented his own deposition testimony. During his deposition, Claimant testified that his assigned shift on May 13, 2017, required him to clock in for work at 3:30 a.m. at Terminal A. (R.R. at 52a.) Claimant explained that he typically parked in the International Plaza

2

lot instead of the designated Airport employee lots served by the public shuttle bus, because the shuttle bus's unreliable schedule often caused him to report late to work and from the International Plaza lot he could just walk to Terminal A to clock in. (*Id.* at 53a.) He stated that the walk from the International Plaza lot to Terminal A was "about a block" and that he did not park in the general public lot that is even closer to his workplace because it would require him to pay the parking cost himself. (*Id.*)

Claimant testified further that he understood the International Plaza lot to be open to all Airport employees but not to the general public. (*Id.*) He stated that "it was . . . common knowledge that if you had a [sic] early start, . . . [you would] use that lot because it was the most convenient lot." (*Id.* at 54a.) He testified that he observed Employer's managers and supervisors parking in the International Plaza lot for work "every single day." (*Id.* at 65a.) Claimant identified those managers and supervisors based on their distinctive attire and, in a few instances, based on recognizing specific individuals with whom he worked. (*Id.* at 54a.) He also stated that "[e]verybody . . . [f]rom customer service to the ramp, and even TSA,"[2] parked at the International Plaza lot. (*Id.* at 65a.) Claimant confirmed that two unpaved footpaths are "carved out from the [International Plaza] lot through the trees to the roadway," where each footpath meets a guardrail running along the street. (*Id.* at 55a.) The first footpath has a section of the guardrail cut away to allow pedestrians to pass through to the street, whereas pedestrians using the second footpath must climb over the guardrail to reach the street. (*Id.*)

Claimant explained that, at around 3:25 a.m. on May 13, 2017, he parked his vehicle in the International Plaza lot and began walking toward Terminal A via the

---

[2] TSA refers to the Transportation Security Administration.

second unpaved footpath. (*Id.* at 56a, 63a.) As he attempted to climb over the guardrail onto the roadway, his right foot caught on the guardrail and his left foot slipped, causing him to fall and sustain the disabling injury at issue in this case. (*Id.* at 56a.) Claimant emphasized that the footpath he used was "the [footpath] that most people . . . take" to walk from the International Plaza lot to Terminal A. (*Id.* at 55a.) In fact, Claimant described several photographs that show a person climbing over the same guardrail to access the footpath on the way to the International Plaza lot. (*Id.* at 55a-56a.)

On cross-examination, Claimant acknowledged that the DOA provided him access to the Bartram Avenue and Cargo City lots for his use free of charge, including use of the public shuttle bus from those lots to the Airport. (*Id.* at 62a-63a.) He also confirmed that the DOA issued him a SIDA[3] badge allowing access to those employee lots and that Employer never provided him with any means of parking in other lots. (*Id.* at 62a.) He stated that, to his knowledge, Employer neither provides a parking program nor pays for his parking. (*Id.*) He reiterated, however, that he usually parked in the International Plaza lot to avoid difficulties with the public shuttle bus. (*Id.* at 61a.) He stated that it was only after the May 13, 2017 injury that he became aware that the International Plaza lot was designated only for employees working in adjacent office buildings, not those employees working in Terminal A, and that he was not permitted to park there. (*Id.* at 61a, 65a.) He denied that anyone, including Employer and the DOA, had ever given him or other employees specific directives about where to park. (*Id.* at 65a.)

In opposition to Claimant's claim petition, Employer presented the affidavit of Anthony Stanley, Employer's director of planning and administration.

---

[3] "SIDA" stands for "Secure Identification Display Area." (R.R. at 62a.)

4

(*Id.* at 122a.) He stated that the DOA has provided and designated the Bartram Avenue and Cargo City lots for Airport employees to use free of charge, but employees may choose to park "in any of the 'paid' parking lots in and around the [A]irport, albeit at their own cost." (*Id.*) He emphasized that the International Plaza lot is a private lot that is not affiliated with the Airport in any way and that signs at the entrance to the International Plaza lot (which were present on the date of Claimant's injury) provide that only employees working in the adjacent office buildings may use that lot. (*Id.*) Mr. Stanley claimed that Employer had not permitted its supervisors or managers to use the International Plaza lot and that there would be "no reason for them to do so" because they were provided with parking elsewhere. (*Id.* at 122a-23a.) Finally, he stated that, at some time in 2016, Employer became aware that its employees were unlawfully parking in the International Plaza lot and verbally instructed them not to do so. (*Id.* at 123a.) On June 9, 2017, after Claimant's May 13, 2017 injury, Employer sent an email to all of its employees with the same instruction. (*Id.*)

By decision and order dated August 28, 2018, the WCJ denied Claimant's claim petition, concluding that Claimant failed to prove that he sustained the subject injury in the course and scope of his employment. (WCJ Decision at 8.) In so doing, the WCJ reasoned that the location where Claimant's injury occurred was not within the ownership, control, or business operation area of Employer. (*Id.* at 7.) Recognizing that this alone is not determinative, however, the WCJ went on to conclude that the location of Claimant's injury was not "integral" to Employer's workplace because Claimant had several parking options—including officially designated options—and was not compelled to use the International Plaza lot. (*Id.* at 8.) The WCJ explained:

5

> The evidence was conflicting as to whether [E]mployer expressly prohibited [use of the International Plaza lot] prior to the work injury. This [WCJ] finds that they [sic] did not and that in fact [E]mployer here tacitly allowed their [sic] employees to park there. But this was not the equivalent of "causing" employees to use that lot.
>
> Employer's specific designation of the two lots at Bartram Avenue and Cargo City, and the availability of a shuttle bus to and from those lots, indicates that those two areas were the preferred and "official" parking options. Since the International Plaza lot was one of several available for use, and not one that was expressly sanctioned, that lot cannot be considered 'integral' to [the] work[]place.

(*Id.*) Claimant appealed to the Board, and, by opinion and order dated July 30, 2019, the Board affirmed. Claimant then petitioned this Court for review.

On appeal,[4] Claimant argues that the Board committed an error of law by affirming the WCJ's conclusion that Claimant's injury did not occur in the course and scope of his employment, because, Claimant contends, the location where he was injured is an integral part of Employer's premises. Specifically, Claimant contends that the International Plaza lot and the footpaths leading from it to Terminal A are reasonable means of access to Employer's premises, which the record demonstrates were actually used by Employer's employees, such that they constitute an integral part of Employer's premises. In response, Employer argues that the Board properly affirmed the WCJ's decision to deny Claimant's claim petition because Claimant was not acting in the course and scope of his employment at the time of his injury. Employer first contends that Claimant was traveling to

---

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

6

work—and was not on property owned or controlled by Employer—when he was injured. Employer further claims that the International Plaza lot and associated footpaths are not an integral part of Employer's premises because Employer did not require Claimant to park his vehicle at the International Plaza lot. Rather, Employer insists that the DOA designated the Bartram Avenue and Cargo City lots for Airport employees' use, and, instead of using one of those lots, Claimant independently chose to park in the privately owned International Plaza lot because it was more convenient for him.

Pursuant to Section 301(c)(1) of the Act, an injury is compensable if it "(1) arises in the course of employment and (2) is causally related thereto." *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon)*, 764 A.2d 635, 640 (Pa. Cmwlth. 2000), *appeal denied*, 788 A.2d 382 (Pa. 2001). Injuries may arise in the course of employment in two distinct situations:

> (1) where the employee is injured on or off the employer's premises, while actually engaged in furtherance of the employer's business or affairs; or (2) where the employee, although not actually engaged in the furtherance of the employer's business or affairs, (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on, (b) is required by the nature of his employment to be present on the employer's premises, and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Id.* Whether an injury occurred in the course of employment is a question of law to be determined based on the WCJ's findings of fact. *PPL v. Workers' Comp. Appeal Bd. (Kloss)*, 92 A.3d 1276, 1283 (Pa. Cmwlth.), *appeal denied*, 104 A.3d 6 (Pa. 2014).

As there is no dispute that Claimant was not actually engaged in the furtherance of Employer's business when he was injured, Claimant's injury is compensable under the Act if he establishes that (1) the injury occurred on Employer's premises, (2) Claimant's presence thereon was required by the nature of his employment, and (3) the injury was caused by the condition of the premises or by operation of Employer's business thereon. *See Workmen's Comp. Appeal Bd. (Slaugenhaupt) v. U.S. Steel Corp.*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977) (en banc). Under the first prong of the *Slaugenhaupt* test—*i.e.*, whether the injury occurred on the employer's "premises" as that term is defined in Section 301(c)(1) of the Act—the determinative question is whether the site of the accident is so connected with the employer's business as to form an integral part thereof. *Epler v. N. Am. Rockwell Corp.*, 393 A.2d 1163, 1165-67 (Pa. 1978). In this analysis, "the critical factor is not the employer's title to or control over the area, but rather the fact that [the employer] had caused the area to be used by [its] employees in performance of their assigned tasks."[5]  *Id.* at 1167. Thus, Employer's contention that the International Plaza lot could not be part of its premises because it did not own, maintain, or control that lot is not dispositive of whether the injury occurred on Employer's premises. Rather, we must also consider whether the International Plaza lot, or, more specifically, the footpath leading to/from the International Plaza lot upon which Claimant was injured, is an integral part of Employer's business.

This Court has held that reasonable means of access to the workplace are considered an integral part of the employer's business and, therefore, are part of the

---

[5] While the question of whether an employer required a particular claimant to be at the location of injury constitutes a separate and distinct prong of the *Slaugenhaupt* test, it is also the central factor in determining whether an area not under an employer's ownership or control is part of an employer's premises.

8

employer's premises. *Newhouse v. Workmen's Comp. Appeal Bd. (Harris Cleaning Serv., Inc.)*, 530 A.2d 545, 546 (Pa. Cmwlth. 1987), *appeal denied*, 538 A.2d 879 (Pa. 1988). In *Interstate United Corporation v. Workmen's Compensation Appeal Board*, 424 A.2d 1015 (Pa. Cmwlth. 1981), the claimant worked as a cafeteria worker inside a plant. *Interstate United Corp.*, 424 A.2d at 1016. The employer leased the cafeteria from the plant owner. *Id.* The claimant sustained injuries after falling on the steps of a footbridge that connected the plant to a public street. *Id.* The plant owner, not the employer, owned and controlled the footbridge. *Id.* This Court, in concluding that the footbridge comprised the employer's premises for the purposes of the Act, opined that "a reasonable means of access to . . . an employer's business operation is such an integral part of an employer's business as to be encompassed within the definition of 'premises' as that term is used in Section 301(c)(1) of the Act." *Id.* at 1017.

We have also held that, where an employer's premises has multiple routes of access, more than one of those routes may be deemed integral to the employer's business and part of its premises. *See Fashion Hosiery Shops v. Workmen's Comp. Appeal Bd.*, 423 A.2d 792, 796-97 (Pa. Cmwlth. 1980). In *Fashion Hosiery Shops*, a claimant sustained injuries after she slipped and fell while approaching an entrance to her workplace. *Id.* at 794. The employer maintained three separate points of entry and indicated no preference about which entrance the claimant should use. *Id.* at 793-94, 797. The employer did not own, lease, or control the walkway upon which the claimant fell. *Id.* at 797. On appeal to this Court, the employer essentially argued that the claimant's injury did not occur on its premises because the claimant could have chosen a different entrance and the employer did not instruct her to use any specific one. *Id.* at 794. We rejected that argument and held that all three means

9

of ingress were part of the employer's premises. *Id.* at 797. In so holding, we opined:

> [T]he claimant was injured on an entranceway that was available *and intended* for her use; and as such, it constituted part of the employer's premises . . . . [T]he availability of alternative entrances [does not] nullify that conclusion. Each of the three available *and intended* ways of ingress to [the employer's] shop was a part of [the employer's] "premises" for purposes of Section 301(c) of the [Act].

*Id.* (emphasis added).

Of particular relevance to this matter, we have previously applied these principles to a different means of ingress to Employer's premises—the two parking lots designated by the DOA for Airport employee use and the associated public shuttle bus. *See US Airways, Inc. v. Workers' Comp. Appeal Bd. (Bockelman)*, 179 A.3d 1177, 1183 (Pa. Cmwlth. 2018) (*Bockelman I*), *aff'd*, 221 A.3d 171 (Pa. 2019) (*Bockelman II*) (collectively, *Bockelman*). In *Bockelman*, the claimant slipped and fell while riding the shuttle bus from one of the Airport's terminals to one of the employee lots where she had parked. *Bockelman I*, 179 A.3d at 1179. We held that the claimant sustained her injury in the course and scope of her employment because the shuttle bus was an integral part of Employer's premises. *Id.* at 1182. We reasoned that "Employer understood that the airport would transport [its] employees who drove to work" and that, "in order to leave their work area at the end of their shift, employees who drive to work invariably board the shuttle bus to return to their vehicle." *Id.* We separately addressed whether the claimant's employment required her to use the shuttle bus[6] and emphasized the WCJ's finding

---

[6] We recognize that this analysis addressed the distinct second prong of the *Slaugenhaupt* test—*i.e.*, whether "the nature of [the c]laimant's employment required her" to be on the shuttle

10

that Employer had designated the employee lots for employee parking. We observed that "[the c]laimant's utilization of the shuttle bus service was expected," and we held that use of the shuttle bus was so connected to the claimant's employment that it was essentially required by Employer. *Id.* at 1183. We also specifically rejected Employer's counterargument, opining that "[t]he absence of a directive by Employer instructing [the c]laimant to utilize the shuttle bus does not alter this analysis." *Id.*

On appeal, the Pennsylvania Supreme Court affirmed. *Bockelman II*, 221 A.3d at 179. After noting that *Epler* best illustrates how to define an employer's "premises" for purposes of Section 301(c)(1) of the Act, the Supreme Court reasoned as follows:

> As part of [Employer's] business relationship with the [A]irport, [Employer] clearly was aware that the [DOA] would make employee parking available to [its] employees. . . . Additionally, [Employer] was required to (and did) obtain SIDA badges—which could then be used to enter the . . . employee parking lots—for all of its Philadelphia-based flight attendants. Given these facts, we have little difficulty concluding that the parking lot and shuttle were connected with, and thus integral to, Employer's business operations at the [Airport].

*Id.*

A plurality of the Supreme Court in *Bockelman II* joined in a portion of the opinion that went further, opining that some of this Court's prior decisions had improperly narrowed *Epler's* holding. *See id.* at 177-79 (discussing *Kloss*, 92 A.3d at 1288; *Waronsky v. Workers' Comp. Appeal Bd. (Mellon Bank)*, 958 A.2d 1118, 1125 (Pa. Cmwlth. 2008), *appeal denied*, 968 A.2d 1281 (Pa. 2009); and *Ortt v.*

---

bus when she was injured—which we do not reach in this case. *Bockelman I*, 179 A.3d at 1182. We discuss that analysis here only because it relates directly to the central question under the first prong—*i.e.*, whether Employer "caused the area [where the injury occurred] to be used by [its] employees in performance of their assigned tasks." *Epler*, 393 A.2d at 1167.

11

*Workers' Comp. Appeal Bd. (PPL Servs. Corp.)*, 874 A.2d 1264, 1267-68 (Pa. Cmwlth. 2005)). In those decisions, we essentially held that a parking area was not integral to an employer's premises if employees were not required to use the parking area. Our Supreme Court's plurality in *Bockelman II* observed that these decisions may have "led to the mistaken belief that a parking area cannot be integral to an employer's premises if workers are given a choice whether or not to use it." *Id.* at 178. The plurality noted that virtually every employee can commute to work in a variety of ways without using employer-offered parking. *Id.* In conclusion, the plurality reemphasized *Epler*'s central holding—"that the phrase 'the employer's premises' in Section 301(c)(1) of the Act should be construed liberally to include any area that is integral to the employer's business operations, including any reasonable means of ingress to or egress from the workplace." *Id.* at 179.

Turning to the instant matter, we emphasize a critical finding by the WCJ—that Employer specifically designated the lots at Bartram Avenue and Cargo City, and the shuttle bus serving them, as "the preferred and 'official' parking options." (WCJ Decision at 8.) By doing business at the Airport, where the DOA formally designated those employee parking lots, Employer relied on the employee lots and shuttle bus to provide a reasonable means of ingress for employees who drive to work. In doing this, Employer essentially "caused" its employees to use *those* lots and the shuttle bus. This fact was the touchstone of the analysis this Court and our Supreme Court performed in *Bockelman*, where Employer "understood" and "expected" employees' transportation on the shuttle bus, *Bockelman I*, 179 A.3d at 1182-83, because of its "business relationship with the [A]irport," *Bockelman II*, 221 A.3d at 179.

12

By contrast, Employer's apparent silence about its employees' use of the International Plaza lot did not "cause" its employees to use that lot or transform it into a "reasonable means of ingress" to Employer's workplace. Our reasoning in *Bockelman I*—as affirmed by our Supreme Court in *Bockelman II*—emphasized that employees' choices about where to park at the Airport are not choices between equal alternatives without an official preference. This matter differs, therefore, from *Fashion Hosiery Shops*, where all three entrances were equally "intended" for employee use. *Fashion Hosiery Shops*, 423 A.2d at 797. Here, the WCJ found that Employer's business arrangement with the Airport establishes a clear preference for employees to use the designated employee lots for parking. Under *Bockelman*, that official designation essentially defines which parking areas are integral parts of Employer's premises—a definition that excludes the International Plaza lot, making it an inherently less reasonable means of ingress. Thus, we conclude that the International Plaza lot is not part of Employer's premises because Employer "caused" the designated employee lots—and not the International Plaza lot—to be used by its employees and, thus, to be integral to Employer's operations. *See Epler*, 393 A.2d at 1167.

Moreover, even if the International Plaza lot was an integral part of Employer's operations, we must consider the location at which Claimant's injury actually occurred. It did not occur in the International Plaza lot itself, as the parties sometimes suggest, but rather "while walking from the International Plaza . . . lot to [Claimant's] work[]place." (WCJ Decision at 8.) Specifically, Claimant took the second unpaved footpath from the International Plaza lot to the street adjacent to Terminal A, where "[t]here is no gap in the guardrail where this [foot]path abuts the roadway." (*Id.* at 4.) Because of this, Claimant was forced to climb over the

13

guardrail and was injured when his foot caught on the guardrail and he fell onto the roadway. (*Id.*) Claimant's testimony—which the WCJ credited in full—establishes that another footpath leads from the International Plaza lot to the same street, but has a section of the guardrail cut away allowing pedestrians to walk through. (*Id.*) At a minimum, when presented with those two alternatives, it is unreasonable for an employee to choose the footpath that requires climbing over an obstacle on an unpaved surface next to a roadway in darkness. Thus, because the footpath on which Claimant was injured is not a "*reasonable* means of ingress" to the workplace, it is not integral to Employer's business operations and is not part of Employer's premises. *Bockelman II*, 221 A.3d at 179.

For the foregoing reasons, we conclude that Claimant sustained the subject injury outside the course and scope of his employment. Accordingly, we conclude that the Board did not commit an error of law in affirming the WCJ's decision to deny Claimant's claim petition, and we will affirm the Board's order.

P. KEVIN BROBSON, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric Hayes,                      :

               Petitioner      :

                      :

          v.               :    No. 1053 C.D. 2019

                      :

Workers' Compensation Appeal    :

Board (US Airways Inc.),        :

             Respondent   :

# **O R D E R**

AND NOW, this 28th day of July, 2020, the order of the Workers' Compensation Appeal Board is AFFIRMED.

_____

P. KEVIN BROBSON, Judge
