IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James L. Weaver d/b/a           :
Captain Clothing Company,      :
                    Petitioner     :
           v.             :   No.  490 C.D. 2020
                            :   Submitted:  October 30, 2020
Sally Breinig (Workers' Compensation  :
Appeal Board),            :
                  Respondent  :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON            FILED:  April 26, 2021

James L. Weaver d/b/a Captain Clothing Company (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed an order of a Workers' Compensation Judge (WCJ) granting the claim petition of Sally Breinig (Claimant) under the Workers' Compensation Act (Act).[1] Employer argues the Board erred as a matter of law in deeming Claimant within the course of her employment under Section 301(c)(1) of the Act, 77 P.S. §411(1), when she slipped and fell on her walk into work from her Employer-paid parking space. Employer asserts the parking space was not on its premises as that term is construed by this Court in the parking lot context.  Based on precedent holding that "premises" includes reasonable means of access between a parking lot and the worksite, *see Epler v. North American Rockwell Corp.*, 393 A.2d 1163, 1167 (Pa. 1978), we affirm.

_____
[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

# I. Background

At the time of the incident, Claimant had worked for Employer as an embroidery manager for 13 years. On February 10, 2017, minutes before her shift, Claimant fell on her way into work while trying to avoid ice when walking from her spot in the small, public parking lot owned by Carnegie Borough (Borough) behind Employer's building. Aided by a co-worker, Claimant went into work and reported the incident to her manager who drove her to the hospital to treat a left-wrist fracture.

Claimant filed claim petitions against both Employer and the Uninsured Employer's Guaranty Fund (UEGF),[2] which were consolidated before the WCJ for a hearing. She sought indemnity and partial disability benefits from the date of injury through August 11, 2017.

At the hearing, Claimant testified about the circumstances of her injury. She testified she fell on the sidewalk adjacent to Employer's building, around 8:00 a.m., her start time, walking from her parking spot to work. She saw ice on the pathway, and, while trying to avoid it, she slipped. Employer leased the parking spot in the Borough-owned lot, and Claimant always used the same spot. However, Claimant was not required to use the parking spot. Reproduced Record (R.R.) at 55a. On the day of her injury, Claimant walked through the small "parklet," also Borough-owned, to Employer's building. R.R. at 14a, 19a. Though there were three possible routes from the parking area to the business, *see* R.R. at 27a, Claimant took the most direct route to the main entrance of Employer's building, through the "parklet" a couple doors away, adjacent to the alley, and that is where she fell. WCJ Dec., 5/28/19, Finding of Fact (F.F.) Nos. 6(r), 7(d); R.R. at 22a.

---

[2] The UEGF is a state fund for payment of workers' compensation benefits to claimants where the liable employer did not have workers' compensation insurance on the date of the work injury. *See* Section 1602 of the Act, added by the Act of November 9, 2006, P.L. 1362, 77 P.S. §2702.

James Weaver, Employer's owner and operator (Owner), testified about the location of the business, the path used, and the parking area. Using photographs, including an aerial view, Owner confirmed the business was located in a plaza in the middle of a group of buildings that included two other buildings he owned. *See* R.R. at 38a-40a. All three routes to Employer's business require walking around the other two buildings. He confirmed the employees used the East Main Street entrance, which was the main entrance to the business. Owner agreed that the most direct route to Employer's main entrance was the one Claimant used, through the Borough-owned parklet area along the alley. R.R. at 44a, 49a-50a (Ex. B, photograph).

Relevant here, Owner acknowledged Employer paid the full amount for 3 parking permits for 3 spaces in the Borough's lot for use by its 11 employees. *See* F.F. No. 7(h); R.R. at 28a. Before Employer had permits, Claimant requested parking since there was no guarantee of finding a space near the building. *See* R.R. at 24a. Employer assigned spaces to Claimant, the manager, and another employee, but the spaces were available for other employees to use when they were out. R.R. at 34a. Employer's artist began using Claimant's space after she left. R.R. at 42a.

The WCJ credited Owner's and Claimant's testimony. *See* F.F. No. 15. The WCJ found that Claimant parked in her assigned space and walked the most direct route to Employer's business. F.F. No. 6. He found that while the Borough owned the area where Claimant fell, F.F. No. 17, Employer rented the parking space. *See* Conclusion of Law (C.L.) No. 1. Because he found the parking space was part of Employer's premises, and Claimant was walking from her space to the worksite, the WCJ concluded that Claimant was injured in the course of her employment. F.F. Nos. 17, 19. The WCJ granted the claim petition and ordered UEGF to pay the awarded benefits.

3

Employer appealed to the Board, challenging the WCJ's Findings of Fact Nos. 6(c) (finding Claimant fell on walkway next to the building or had an assigned parking spot) and 19 (finding she was in the course of employment when she fell).[3] Employer also assigned error to the WCJ's legal conclusions that the parking space was within Employer's premises under Section 311(c) of the Act, 77 P.S. §411(1), and that Claimant was injured in the course of her employment.

Applying case law construing the term "premises" in Section 301(c) of the Act, the Board affirmed the WCJ and agreed that the parking area behind Employer's building was within its premises. Based on the WCJ's findings, it reasoned: "because Claimant was injured while walking from one part of [the] premises to another, the injury was sustained in the course of employment." Bd. Op., 4/30/20, at 6 (Pet'r's Br., App. A). Employer filed a petition for review from the Board's order.

## II. Discussion

On appeal, Employer argues the Board erred as a matter of law in concluding that Claimant's injury arose in the course of employment by deeming the parking lot part of its premises. Rather, it contends this matter is controlled by this Court's decisions excluding private parking lots from an employer's premises. *See PPL v. Workers' Comp. Appeal Bd. (Kloss)*, 92 A.3d 1276 (Pa. Cmwlth. 2014); *Waronsky v. Workers' Comp. Appeal Bd. (Mellon Bank)*, 958 A.2d 1118 (Pa. Cmwlth. 2008); *Ortt v. Workers' Comp. Appeal Bd. (PPL Servs. Corp.)*, 874 A.2d 1264 (Pa. Cmwlth. 2005) (collectively, Parking Lot cases).[4] Employer asserts that

---

[3] UEGF appealed the WCJ's order to the extent it required UEGF to make payments without a finding that Employer failed to accept and pay the claim or defaulted on payments. However, as the Board modified that part of the order, it was not appealed. Accordingly, the payment issue is not before us.

[4] The Board referred to these three cases as the Parking Lot cases, which Justice Baer distinguished from *Epler* in his concurrence in *US Airways, Inc. v. Workers' Compensation Appeal Board (Bockelman)*, 221 A.3d 171 (Pa. 2019). *See* Bd. Op., 4/30/20, at 7, n.3.

4

since Claimant was not required to use the parking space, the term "premises" in Section 301(c) of the Act did not include her parking space or her route to the worksite.

## A. Course of Employment

To be compensable under the Act, a claimant's injury must arise within the course of employment. *See Markle v. Workers' Comp. Appeal Bd. (Bucknell Univ.)*, 785 A.2d 151, 153 (Pa. Cmwlth. 2001) (*en banc*). Injuries qualify as within the "course of employment" when the employee is injured on or off the employer's premises provided the employee was actually engaged "in furtherance of the employer's business or affairs." *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon)*, 764 A.2d 635, 640 (Pa. Cmwlth. 2000). Additionally, Section 301(c)(1) of the Act also provides that an "injury arising in the course of [her] employment":

> shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employee, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employee's presence thereon being required by the nature of [her] employment.

77 P.S. §411(1) (emphasis added).

Long standing precedent construing this provision further refined "course of employment" to include an employee's injury if the employee establishes: (1) the injury occurred on employer's premises; (2) the claimant's presence was required by the nature of her employment; and (3) the injury was caused by the condition of the premises or by operation of the employer's business thereon. *See Workmen's Comp. Appeal Bd. (Slaugenhaupt) v. U.S. Steel Corp.*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977) (*en banc*). This is often referred to as the *Slaugenhaupt* test. *See US Airways, Inc. v. Workers' Comp. Appeal Bd. (Bockelman)*, 221 A.3d 171, 174-75 (Pa. 2019) (using term when construing premises in Section 301(c) of the Act).

In the instant appeal, Employer's challenge focuses on the first prong of the *Slaugenhaupt* test, whether the injury occurred on its "premises" as that term is used in Section 301(c)(1) of the Act. Whether an employee's injury arose within the course of employment is a question of law that is determined based on the WCJ's factual findings. *Kloss*, 92 A.3d at 1283.

Our evaluation of the first prong of the test requires us to assess whether the site of the fall is "so connected to [Employer's] business . . . as to form an integral part thereof." *Epler*, 393 A.2d at 1165 (citation omitted). In conducting our analysis, "the critical factor is not the employer's title to or control over the area, but rather the fact that [Employer] had caused the area to be used by [its] employees in performance of their assigned tasks." *Id.* at 1167 (emphasis added).

### 1. Premises & Parking Areas

We begin by examining the Parking Lot cases, *i.e.*, *Kloss*, *Waronsky*, and *Ortt*, upon which Employer relies in support of its position, notwithstanding the criticism of those cases by a plurality of our Supreme Court in *Bockelman*.

In *Ortt*, decided in 2005, the claimant fell in a private parking garage due to icy conditions. The facts given the most weight were that the claimant used a privately-owned garage when he could have used one of the four employer-owned parking lots for employees. The garage was open to the public; the employer leased 174 spots; and assigned one to the claimant. Employees could participate in the parking program at a discounted rate, paid through a payroll deduction. The employer did not establish parking requirements or policies. In addition, the parking area was not proximate or contiguous to the employer's building.

Based on those facts, this Court upheld the Board's conclusion that the area was not part of the employer's premises because use of the parking lot was purely

optional. We explained: "Because the injury suffered by [the employee] occurred on a <u>private parking lot</u>, owned and operated by [a parking company], which was responsible for the snow and ice removal that resulted in [his] slip and fall, the order of the Board is affirmed." *Ortt*, 874 A.2d at 1268 (emphasis added). We noted that the employee's use of the spot was a matter of convenience only and that the employer's payment for parking in a private garage was, at best, a perk. *Id.*

In *Waronsky*, decided in 2008, the employee was injured while crossing a public street and walking from the parking garage to the worksite. Unlike *Ortt*, the site of the fall was the route between the parking area and the worksite, not in the parking garage itself. This Court considered that the claimant was injured when struck by a car after crossing the four-lane street without using the crosswalk. Thus, implicitly, the employee's choice to cross such a wide street outside the crosswalk played into the Court's conclusion that the employer did not cause the claimant to be at the site where the injury occurred.

In *Kloss*, decided in 2014, this Court reversed the Board's order in the claimant's favor and concluded that the fact that the employer subsidized parking on a private parking deck did not render the parking area part of the employer's premises. Like *Ortt*, the accident site was a private parking area that was partially paid by her employer. We explained that "[p]roperty becomes integral to an employer's business when the employer requires employees to use that property." *Kloss*, 92 A.3d at 1285. Relying on *Ortt* and *Waronsky*, we held the parking deck where the claimant fell was not integral to the premises because the employer did not *require* her to park there.

Collectively, the Parking Lot cases suggest that an injury sustained between a private parking area and the worksite is not compensable under the Act when the employer does not require or endorse use of the parking area. However,

7

Employer's reliance on the Parking Lot cases is misplaced.  Critically, the Parking Lot cases were decided prior to our Supreme Court's recent decision in *Bockelman*, which held the parking lot used by airline employees was integral to the airline's business as the means of access to the worksite, and so within employer's premises.

In *Bockelman*, the Court considered the question of "whether a worker who voluntarily uses an optional employee parking area remains in the course of her employment while traveling between that area and her typical workspace."  *Id.* at 175.  In assessing the first factor of the three-prong *Slaugenhaupt* test, a majority of the Court explained:  "Parking lots, public streets, and common areas in multi-unit office buildings, for instance, may be considered part of the employer's premises if they are integral to the employer's workspace *or* <u>constitute a reasonable means of ingress to</u> or egress from <u>the workplace</u>."  *Id.* at 176 (emphasis added).  In using the disjunctive, the Court confirmed the construction of "premises" encompasses a "reasonable means of ingress" to the worksite.  *Id.*

Significantly, the Court underscored that "the phrase 'the employer's premises' in Section 301(c)(1) of the Act <u>should be construed liberally to include</u> any area that is integral to the employer's business operations, including <u>any</u> <u>reasonable means of ingress to or egress from the workplace</u>."  *Id.* at 177 (citing *Epler*, 393 A.2d at 1166).  The Court disapproved of our decisions in the Parking Lot cases to the extent they did not construe reasonable means of access liberally.[5]  A plurality of the Court expressly criticized this Court's decisions in the Parking Lot

---

[5] The Court examined our decision in *Waronsky*, which involved facts similar to *Epler* in that the claimant fell when crossing the street from the parking area to the worksite.  A plurality of the Court was not persuaded by this Court's application of *Epler*, where benefits were awarded, characterizing it as "*Epler* revisionism," as it "overstated the level of control that the employer in *Epler* exerted over its employees."  *Bockelman*, 221 A.3d at 178.  In *Epler*, though there were parking policies, the employee was at the accident site because of the parking arranged by his employer.

8

cases for reading *Epler* too narrowly and elevating the importance of the voluntariness of an employee's use of the parking area. *Id.* at 177. Indeed, this part of the opinion implied the Parking Lot cases offer dubious authority as they were "based on a misunderstanding of *Epler's* central holding." *Id.* at 179.

The Court's analysis reveals a crucial distinction between cases in which the location of the injury is the route between the parking area and the worksite, pathway cases,[6] and cases where the injury occurs in the parking area. In the latter, like *Ortt* and *Kloss*, the analysis focuses on characteristics of the parking area involved. In the former, like *Waronsky* and *Epler*, the rationale includes a component of whether the pathway was a reasonable means of ingress/egress to the workplace, such that the path fell within the "premises" under the first prong of the test. This case thus more closely resembles cases in which this Court analyzes premises in terms of means of access to the worksite. *See ICT Grp., Co. v. Workers' Comp. Appeal Bd. (Churchray-Woytunick)*, 995 A.2d 927 (Pa. Cmwlth. 2010).

While this is a nuanced distinction, it is material when the injury occurs on a path that is a reasonable means of ingress or egress to the worksite, which is proximate to the worksite, that location (*i.e.,* accident site) is properly comprised within the term "premises." Because the Board did not account for this distinction between pathway and parking area cases, the point bears elaboration.[7]

### a. Parking Lot/Area Cases

Common to all the Parking Lot cases, the claimant fell while walking between her vehicle and the worksite. The Parking Lot cases are similar in that this

---

[6] For ease of discussion, we use the term "pathway cases" to refer to cases where an accident site is along a means of access to the worksite, including employees' routes to or from a parking area.

[7] Because our review of matters of law is plenary, it is unnecessary to remand to the Board to conduct this analysis in the first instance. *Waronsky*, 958 A.2d at 1123 n.2.

Court's analysis focused on the characteristics of the parking area, and whether use of the area was optional or endorsed by the employer.

The Parking Lot cases were decided in the employer's favor, denying benefits to claimants because private parking lots were excluded from the employers' premises under the Act. However, whether a parking area qualifies as an employer's premises is a fact-heavy determination. That an accident involves a private parking area does not preclude inclusion of an accident site in an employer's premises; rather, the determination depends on multiple factors.

The WCJ made the following findings pertinent to our analysis. Claimant here parked in the Borough-owned permit parking lot behind Employer's business in the Employer-paid spot assigned to her by the manager. As embroidery manager, she was one of the employees provided with an assigned parking spot. Employer decided to provide her with a spot that was convenient to the workplace. *See* R.R. at 24a (Claimant requested parking to guarantee a spot close to the building).

Applying the decisional law construing premises in similar contexts,[8] the facts as found by the WCJ do not compel the legal conclusion that the parking

---

[8] Following the Parking Lot cases, this Court construed premises to exclude areas between a parking lot and the worksite. *See Bradley v. Workers' Comp. Appeal Bd. (TFI Res., Inc.)* (Pa. Cmwlth., No. 1424 C.D. 2015, filed Mar. 15, 2016), 2016 WL 963932 (unreported); *Kruge v. Workers' Comp. Appeal Bd. (Lehigh Valley Techs.)* (Pa. Cmwlth., No. 1153 C.D. 2013, filed Jan. 24, 2014), 2014 WL 273809 (unreported); *Exide v. Workers' Comp. Appeal Bd. (Acosta)* (Pa. Cmwlth., No. 469 C.D. 2013, filed Sept. 18, 2013), 2013 WL 5302553 (unreported).

In *Bradley*, the parking lot where the injury occurred was across a walkway, a courtyard, and two flights of stairs; it was not reserved for employees. This separation from the worksite and multiple routes of access were key to our decision to exclude the lot from the employer's premises.

In *Kruge*, several facts informed our decision. Despite the employer leasing the parking spot, the employer did not require its use and the claimant was free to park where he chose. We focused on the route the claimant used to access the worksite from the parking area and that he did not fall on the street between the lot and the worksite. Rather, the accident site was a concrete driveway apron of an *adjacent* lot several feet away from the worksite when the claimant slipped on ice after deciding to cut through a small opening in the guardrails that surrounded the lot. Essentially, this Court concluded that area was not fairly comprised within an area the employer should have

**(Footnote continued on next page…)**

10

area *itself* (from which Claimant walked) was integral to Employer's business and, on that basis, was part of Employer's premises.

First, here the parking area was a small lot behind Employer's building. Thus, it was proximate to the worksite. Although parking need not be contiguous, its proximity factors into whether an employer should expect its employees to use it. *Cf. Epler* (parking area was separated from worksite by a public street).

Second, while the parking area was owned by the Borough and open to the public, Employer paid for the space. Employer rented 3 parking spots in the same lot for use by 11 employees. In fact, Employer assigned the space to Claimant, and obtained the permit from the Borough for her use.

Third, as to Claimant's parking options, there were no other Employer-paid or provided parking alternatives. The record contains no evidence that there were other equally close or less dangerous alternatives that Claimant could have chosen.

Fourth, there was no requirement for Claimant to use the parking spot. While employees were allowed to use the three spots, which were procured and assigned by Employer to specific employees, they were not required to use them either by Employer's policies or by necessity given the location of the worksite.[9]

---

anticipated workers using to access the worksite. As such, we agreed with the Board that the area between the leased parking spot and the worksite was not part of the employer's premises.

In *Exide*, the circumstances involved a claimant walking from the parking spot into work; the claimant suffered a severe skull injury when hit by a car while crossing a public street from the parking lot to the workplace. Despite that the employer owned the parking lot, this Court reasoned that the employer did not "cause" the claimant to use that particular lot (it owned two lots) or to take a route into work across the street. The other parking lot did not require crossing the street to enter the worksite. Thus, this Court concluded the accident site was not within the premises.

[9] As is discussed later in this opinion, Employer contends that cases in the airline context, like *Bockelman*, and *Piedmont Airlines, Inc. v. Workers' Compensation Appeal Board (Watson)*, 194 A.3d 737 (Pa. Cmwlth. 2018), do not apply because they are factually distinguishable.

11

Whether an area qualifies as "premises" under our case law is a mixed question of law and fact. In the case before us, the fall occurred on the route, not in the parking lot, and so the factors affecting the route, rather than the parking area, are the proper focus of our analysis.

**b. Pathway/Worksite Access Cases**

The principles we distill from pathway cases involving injuries occurring on the route between a parking area and an employer's business involve multiple factors, including the proximity between the accident site and the worksite.

In *ICT Group*, this Court considered whether a claimant who sustained an injury from slipping on ice on her employer's premises when leaving for her lunch break was injured within the course of her employment. The employer argued that the nature of her employment did not require her to be present in the parking lot, but rather she chose to be there during her lunch break. This Court disagreed, concluding that getting to or leaving a worksite is a necessary part of an employee's job. *ICT Grp.*; *see also Piedmont Airlines, Inc. v. Workers' Comp. Appeal Bd. (Watson)*, 194 A.3d 737, 740-41 (Pa. Cmwlth. 2018) (claimant's presence in parking lot to catch the employee shuttle bus was so connected with employment relationship that it was required by the nature of his employment; area was a customary means of ingress).

In *ICT Group*, we upheld the Board's legal conclusion that the claimant was within the course of her employment when she fell on ice walking from a shared parking area to the worksite. This Court determined the parking lot was integral to the employer's business based on the following facts: the worksite was within an office park; the parking lot was situated between the worksite and another building leased by the employer so employees walked through the parking lot to access the worksite; and the parking lot was shared by other tenants in the office park. We noted

12

the claimant was required to take an unpaid lunch break daily and was permitted to leave the worksite on her break; her fall occurred during her mandatory lunch break.

Despite the availability of public transportation, the *ICT Group* Court held the parking lot was part of the premises. We reasoned the parking lot "was a reasonable means of access to the workplace . . . adjacent to the [w]orkplace, and that the location of [the claimant's] fall was only approximately 10 feet from the entrance." *Id.* at 931. The row of parking spaces where the claimant parked every work day was closest to the worksite, and the front row was reserved for the employer's employees. Also, the employees crossed the parking lot during the day to travel to other office buildings during work hours in furtherance of the employer's business. As such, the parking lot was connected to the employer's business. While our analysis considered the employer's connection to the parking area, if any, the use of the parking area as a means of access to employer's business was dispositive.

Here, the circumstances are more comparable to cases involving an area in proximity to an employer's entrance, as ingress to work is integral to employer's business. *See Allegheny Ludlum Corp. v. Workers' Comp. Appeal Bd. (Hines)*, 913 A.2d 345, 349 (Pa. Cmwlth. 2006). As in *ICT Group*, the parking area here was in a plaza comprised of other buildings that Owner also owned. As in *Bockelman*, in this case, there is no dispute that the area where Claimant fell was a customary means of ingress and egress for Employer's employees, making it part of its premises.

Nonetheless, from our thorough review of the case law on this issue, while the Parking Lot cases are not expressly overruled by *Bockelman*, it is clear that the legal analysis of premises does not categorically exclude accident sites between private parking areas and a worksite merely because the parking lot was optional.

13

Further, we are unpersuaded by Employer's contention that *Bockelman* and other cases involving airlines (*e.g.*, *Piedmont Airlines*) do not govern because their unique circumstances render them factually distinguishable. Employer posits that these cases are confined in their application to the airline/airport context. *See* Pet'r's Br. at 10, 13. Though we recognize the route from a parking area to an airport worksite may involve multiple legs as a matter of necessity, given the location of and restricted access to the worksite and the distance between the airport and parking areas, we disagree that the decisions are limited by those facts.

Our Supreme Court's reasoning in *Bockelman*, which reaffirmed *Epler* as the touchstone for premises analysis, applies equally to this context. Further, it is consistent with this Court's reasoning in cases outside the airline context. *ICT Grp.*; *Allegheny Ludlum*. Although more recent cases construing premises under the Act involved airlines or an airport as the worksite (*Hayes, Piedmont Airlines*), we discern nothing in the reasoning of those cases that confines them to the airline context.

In excluding parking areas from an employer's premises in the Parking Lot cases, this Court emphasized the importance of employees' options and an employer's requirements. *See supra* note 8. However, the full Court in *Bockelman* underscored that the key factor in *Epler* is whether an employer "caused" an employee to be in the location of the accident, which does not entail that an employer impose a requirement to use that location (like a parking spot). *Bockelman*, 221 A.3d at 177.

Further, there is no dispute that Claimant was walking on her way in to work, using the most direct route, at the time she slipped and fell. *See* R.R. at 44a. The term "premises" under the first prong of the *Slaugenhaupt* test includes the reasonable means of ingress and egress from the worksite. Therefore, on this basis, we deem the first prong of the *Slaugenhaupt* test met.

14

## 2. Premises as Reasonable Access to Worksite

This Court recently recognized the overlap between the first and second prongs of the *Slaugenhaupt* test in analyzing the scope of premises when the accident site is in the path of access (ingress/egress) to a worksite to or from an employee's form of transport. *Hayes v. Workers' Comp. Appeal Bd. (US Airways Inc.)* (Pa. Cmwlth., No. 1053 C.D. 2019, filed July 28, 2020), slip op. at 8 n.5, 2020 WL 4332507, at *4 n.5 (unreported).[10]  While generally a reasonable means of access is considered as part of the second prong of the test, in pathway cases it can also be part of the first prong.

Since the *Bockelman* decision, in *Hayes*, this Court analyzed the scope of premises cognizant that the term includes a reasonable means of access to the worksite.  There, this Court affirmed the Board's conclusion that the claimant failed to prove his injury occurred in the course and scope of employment.  The employer was US Airways, and thus it arose in the airline context and involved access to an airport.  The airline employee drove his own vehicle to work and parked in one of the airport lots.  For the two lots owned by the City and designated for airport employees, a public shuttle transported individuals from those lots to the airport.  Instead of using the employee-designated lots, the airline employee chose to park in a private lot within walking distance of the terminal, and it was while walking from the private lot (not open to the public) to the airport that he tripped and fell.

Relevant to this Court's and the Board's consideration in *Hayes* was that the employee chose a pathway from the private parking lot that involved climbing over a guardrail to the street.  Other employees used this pathway, despite that another pathway directed pedestrians through a cut-away in the guardrail.  It was also germane to our analysis that the airline did not designate the use of the

---

[10] This case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

private lot, or that employees needed an employee badge to use the designated parking lots. Indeed, the employer also directed its employees *not* to use the lot used here because it was not designated for their use. That the airline employee had several parking options was material, as was the choice of using a non-designated parking area that was not authorized by the employer.

Informed by *Bockelman*, this Court focused on the path between the parking area and the worksite, and whether that was a reasonable means of access, not on whether the parking space was itself part of the employer's premises. *Hayes*.

This Court's case law pre-dating *Bockelman* similarly holds that a reasonable means of access to the workplace is an integral part of the employer's business. *See ICT Grp.*; *Motion Control Indus. v. Workmen's Comp. Appeal Bd. (Buck)*, 603 A.2d 675 (Pa. Cmwlth. 1992); *Newhouse v. Workmen's Comp. Appeal Bd. (Harris Cleaning Serv., Inc.)*, 530 A.2d 545 (Pa. Cmwlth. 1987); *Interstate United Corp. v. Workmen's Comp. Appeal Bd.*, 424 A.2d 1015, 1017 (Pa. Cmwlth. 1981) (claimant fell off footbridge connecting plant to public street, and employer did not control the area of the injury; held footbridge was employer's premises under the Act as "a reasonable means of access" to employer's business); *Fashion Hosiery Shops v. Workmen's Comp. Appeal Bd. (Kurta)*, 423 A.2d 792 (Pa. Cmwlth. 1980). *See also Robinson v. Y.W.C.A.*, 257 A.2d 690 (Pa. Super. 1969) (held alley near public sidewalk adjacent to employer's building was premises because needed for worksite access).

As our highest court reasoned in *Bockelman*, that an employee is not *required* to use the area in question is not dispositive; if a means of access is customarily used by employees for ingress and egress, that area can be such an integral part of an employer's business as to be considered part of the employer's

premises. *See ICT Grp.*; *US Airways, Inc. v. Workers' Comp. Appeal Bd. (Bockelman)*, 179 A.3d 1177, 1181 (Pa. Cmwlth. 2018), *aff'd*, 221 A.3d 171 (Pa. 2019) (injury occurred when employee used shuttle from employee parking lot and slipped on bus); *Piedmont Airlines.*

Moreover, an employee will be considered within the course of her employment "if the injury occurred on the employer's premises at a reasonable time before or after the work period." *Newhouse*, 530 A.2d at 547 (deeming 15-minute timeframe reasonable); *see Epler*, 393 A.2d at 1165-66 (deeming 20 minutes before or after shift reasonable); *Ace Wire Spring & Form Co. v. Worker's Comp. Appeal Bd. (Walshesky)*, 93 A.3d 923, 932 (Pa. Cmwlth. 2014) (analyzing reasonable timeframe; deeming an arrival more than an hour before a shift reasonable based on employee's activities). "The rationale behind this rule is that 'once an employee is on the employer's premises, actually going to or leaving the employee's work station is a necessary part of that employee's employment.'" *ICT Grp.*, 995 A.2d at 932 (quoting *Allegheny Ludlum*, 913 A.2d at 349).

Here, Owner agreed Claimant's path through the parklet was the most direct route to the business.[11] Claimant routinely used that means of ingress to her place of employment. The route was reasonable, without obstruction. *Cf. Hayes* (guardrail between path and road that claimant tripped over when alternate route

---

[11] Regardless, where there are multiple routes of access to an employer's worksite, more than one of those routes may be deemed integral to the employer's business, and thus part of its premises. *See Hayes v. Workers' Comp. Appeal Bd. (US Airways Inc.)* (Pa. Cmwlth., No. 1053 C.D. 2019, filed July 28, 2020), slip op. at 9, 2020 WL 4332507, at *4 (unreported) (citing *Fashion Hosiery Shops v. Workmen's Comp. Appeal Bd. (Kurta)*, 423 A.2d 792, 796-97 (Pa. Cmwlth. 1980)). In *Fashion Hosiery Shops*, a claimant was injured when she slipped and fell while approaching an entrance to her workplace. Though there were different points of entry and means of ingress to the business, and the employer did not own or control the walkway where the claimant fell, we held that all three means of ingress were part of the employer's premises. *Id.* at 797.

without obstacle existed rendered claimant's chosen route unreasonable). Therefore, the reasonable means of access that Claimant used between her assigned parking space and Employer's main entrance is properly construed as part of Employer's premises, rendering her injury compensable under the Act. *Bockelman.*

Based on the findings of the WCJ, we affirm the Board's conclusion that Claimant was injured on Employer's premises because the area where she fell was within a reasonable means of access to the worksite. *Bockelman.* As analyzed above, our holding is consistent with precedent, including pathway cases outside the airline context, that when a claimant's injury occurs between a parking area and the worksite, and within a reasonable means of access to the worksite, the accident site falls within the employer's premises. *See, e.g.*, *ICT Grp.* (employer did not own or lease parking lot but it was proximate and a means of worksite access).

## B. Other Factors/Causation

Because Employer did not dispute the other prongs of the *Slaugenhaupt* test,[12] we need not discuss them. Nonetheless, we observe that ice is often deemed a condition of the premises under the third prong. *See, e.g.*, *ICT Grp.*

---

[12] The second prong of the test, that the employee is required to be present at the accident site by the nature of her employment, is satisfied not only where an employee is working onsite, but also where she is entering or exiting the workplace within a reasonable time before or after her shift. *See Bockelman*, 179 A.3d at 1182-83 (discussing *ICT Grp. v. Workers' Comp. Appeal Bd. (Churchray-Woytunick)*, 995 A.2d 927, 932 (Pa. Cmwlth. 2010) (holding that an employee leaving for lunch break and walking on employer's premises met prong as her presence was required by the nature of her work), and *Allegheny Ludlum Corp. v. Workers' Comp. Appeal Bd. (Hines)*, 913 A.2d 345, 349 (Pa. Cmwlth. 2006) (holding that an employee starting his shift and walking along the only authorized route to workspace was required, by the nature of his work, to be present in the area of the accident)). As such, the second prong is met here.

The third prong, that a condition of the premises caused the injury, was met by the presence of ice. Snow and ice generally constitute conditions under the third prong. *Cf. Ortt*, 874 A.2d at 1268 (involving snow and ice not removed from private parking lot maintained by private company); *Markle v. Workers' Comp. Appeal Bd. (Bucknell Univ.)*, 785 A.2d 151, 154-55 (Pa. Cmwlth. 2001) (*en banc*) (snow, while a condition of the premises, was not the cause of the injury **(Footnote continued on next page…)**

### III. Conclusion

Claimant met her burden of proving the elements of her claim petition. Because Claimant's injury occurred when she was using a reasonable means of access, walking to Employer's building from her parking space shortly before her shift started, she was within the course of employment at the time of her injury. Construing "premises" liberally, the term includes the route Claimant used to access the worksite from her parking space as a reasonable means of ingress to the worksite. *Bockelman*, 221 A.3d at 177. Accordingly, we affirm the Board's order on this basis. *See, e.g.*, *Morwald v. Workmen's Comp. Appeal Bd. (Eng'g & Refrig., Inc.)*, 599 A.2d 307, 308 (Pa. Cmwlth. 1991) (though the Board erred in aspects of its analysis, affirming the decision on alternate grounds).

$$\overline{\phantom{XXXXXXXXXXXXXXXXXXXX}}$$

J. ANDREW CROMPTON, Judge

---

when claimant injured herself climbing over car console from passenger side when driver's side was blocked by snow); *Bradley*, slip op. at 3-4, 2016 WL 963932, *2-3 (involving icy walkway so third prong not challenged).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James L. Weaver d/b/a         :
Captain Clothing Company,     :
             Petitioner    :
         v.            :   No.  490 C.D. 2020
                      :
Sally Breinig (Workers' Compensation  :
Appeal Board),           :
            Respondent   :

# **O R D E R**

**AND NOW**, this 26th day of April 2021, the order of the Workers' Compensation Appeal Board is AFFIRMED in accordance with the accompanying opinion.

_____
J. ANDREW CROMPTON, Judge