Annabelle E. Carl, Petitioner *v.* Workmen's Compensation Appeal Board (G. H. Delp Company), Respondents.

Argued September 15, 1983, before Judges MAC-PHAIL, DOYLE and BARBIERI, sitting as a panel of three.

*Joseph A. Zane, Zane and Zane, P.C.* for petitioner.

*Frank L. Tamulonis, Jr., Zimmerman, Lieberman & Derenzo,* for respondent, G. H. Delp Company.

OPINION BY JUDGE BARBIERI, January 4, 1984:

Claimant in this workmen's compensation case, Annabelle E. Carl, appeals here from an order of the Workmen's Compensation Appeal Board disallowing compensation on the basis of findings by a compensation referee. We will reverse and remand.

The uncontradicted testimony in this case establishes that Claimant, a computer operator, suffered the rupture of a cerebral aneurysm as a result of physical exertion while pushing the car of a fellow employee in the snow on January 20, 1978. She has not returned to work since, and the employer has hired another to take her place, thereby denying her request

for reemployment, among her efforts to attempt return to employment.

Following her injury on January 20, 1978, she was hospitalized and, on February 9, 1978, surgery was performed, consisting of a right frontal temporal craniotomy. The hemorrhaging which took place before surgery was from a middle cerebral artery in a surgically difficult area of the brain and was such that the normal stripping of the aneurysm could not be performed, so that the bleeding was stopped by inserting "a piece of muscle around the aneurysm." There was conflicting testimony on when she would be able to return to work, her employment being somewhat sedentary, but it is uncontradicted that she was unable to perform any form of gainful occupation at least until June 13, 1978. Claimant continues to be treated for disorders from which she still complains, such as dizziness, vertigo, headaches, weakness, nervousness and "ringing of the ears." She is, however, willing to work but has been unable to find suitable employment. The central issue before us, as it was before the referee and the Board, is whether the place and the occasion of the claimant's injury made it compensable under the provisions of Section 301(c) of The Pennsylvania Workmen's Compensation Act.[1] Section 301(c) defines the phrase "injury arising in the course of employment," to

> include all . . . injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411.

injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employee's presence thereon being required by the nature of his employment.

The occasion for exertion which caused Claimant's injury was a heavy snowfall described as twelve inches of snow, which led to an early termination of work at 1:00 P.M. Claimant's car and that of a fellow worker, Roseann Callaghan, were parked in an authorized spot, designated as Parking Lot B. Although there is some confusion in the testimony as to whether or not another parking lot, Parking Lot A, "was the designated" parking lot, the lease and other circumstances in the case, including the fact that claimant's superior also was parked in Parking Lot B, all establish that claimant and her fellow employee, Roseann Callaghan, had parked their cars in an authorized parking lot. The lease contains the following provision:

Lessor grants to Lessee [employer] for the benefit of Lessee's, officers, employees, . . . in common with the Lessor's other tenants . . . a non-exclusive right to use, free of charge, the common area service drives providing ingress and egress between the Leased Premises on Route #601.

Lessor hereby delivers and grants to Lessee, its employees, agents and business visitors . . . the exclusive right to the free use of those parking spaces in Area "A" . . . a non-exclusive right to the free use of those parking spaces shown in Area "B". . . .

When Claimant was advised that the plant would be closed, she called her husband who drove her to and from work, but he was unable to come for her, sending

another man to provide transportation to Claimant. Roseann Callaghan waited inside the building until the car for Claimant arrived. Roseann and Claimant went to their separate vehicles, Roseann's car having been towed from the lot to a spot closer to the exit driveway.[2] At this point Roseann could not get her car out of the snow. Claimant and the young man sent by her husband pushed her until she was able to get on her way. It was then that Claimant suffered the symptoms of a rupture of the cerebral aneurysm.

The referee made many findings, the principal ones involved in this appeal stating that "the vehicle of Roseann Callaghan, at that time, was not on the premises of the employer nor on the designated parking lot;" that "at the time of the incident of January 20, 1978, at approximately 3:00 P.M., claimant was not furthering the business or affairs of her employer;" at that time "claimant was not on the premises of her employer;" and that Claimant was not then "in the course of her employment with the defendant-employer." The referee's conclusions of law are basically that "Claimant failed to prove the incident of January 20, 1978 occurred on the premises or parking lot of her employer;" failed to prove that she was then "engaged in the furtherance of her employer's business or affairs;" failed to prove "that at the time of the incident of January 20, 1978, she was in the

---

[2] The spots designated by Employer's witness, Douglas Smith, as the locations of Claimant's and Callaghan's automobiles, marked by him with X's, are both within Lot B on either side of an exit driveway. Mr. Smith, Claimant's immediate superior, testified that his car was also parked on Lot B. While he stated at one point that the X indicating the location of Mrs. Carl's car was not on the "leased portion of parking lot leased by D. H. Delp Company," his actual X marks, the lease itself and his other testimony is to the contrary. Also, it is more relevant where the injury occured, at Roseann Callaghan's car, than where the car was in which she sat before or after the injury took place.

course of her employment with the defendant-employer," and that she "failed to meet her burden of proof to establish she suffered an injury on January 20, 1978, within the meaning of the Workmen's Compensation Act as amended."[3] The referee's order is that the Claimant's Claim Petition be dismissed "for failure of Claimant to prove she suffered an injury on January 20, 1978, within the meaning of the Workmen's Compensation Act, as amended."

Since we will remand for the purpose of awarding appropriate compensation and other expenses of the Claimant, including a determination of the extent of Claimant's disability after June 13, 1978, we will here address only the principal issue addressed by the

---

[3] This "conclusion" is inexplicable. All three of the medical witnesses, all fully qualified, testified unequivocally to the contrary. Dr. Herbert C. Johnson, neurosurgeon, testifying for Claimant stated:

It is my opinion that the hemorrhage occurred as a result of a rupture of the cerebral aneurysm, which in my opinion, ruptured as a result of physical exertion associated with pushing the car in the snow on January 20, 1978.

Dr. David A. Tilly, neurosurgeon called by defendant, testified:

Q. There's no doubt in your mind that the reason this problem precipitated itself was because she exerted herself when she was pushing the car in the snow. Is that correct, Doctor? I believe that is what you said on direct examination.

A. Well, I think the exertion of pushing the car is what caused the aneurysm to rupture or associated with that in a temporal fashion.

Q. I am not saying it caused the aneurysm. That was the precipitating factor, was it not?

A. Right.

Dr. Mohammad Aslam, Board Certified neurologist testifying for Claimant, stated:

A. Source of the problem was the aneurysm which ruptured at that time [January 20, 1978] when she was pushing the car.

Board: Whether Claimant's injury was one arising in the course of her employment within the meaning of Section 301(c)(1) of the Act. First, there can be no question that parking lot "B" constituted "premises" of the employer under parking lot cases decided by this court and by the Supreme Court. *Epler v. North American Rockwell Corp.*, 482 Pa. 391, 393 A.2d 1163 (1978); *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board*, 66 Pa. Commonwealth Ct. 393, 444 A.2d 837 (1982). It is worth noting that in *Port Authority*, an award was sustained where the employee met his death one and one half hours after his work shift ended while he was engaged in shoveling snow from his car in the employer's parking lot. This court stated: "[The] snow was a condition of the parking lot which necessitated D'Agostino to shovel his car free." In the instant case, greater merit for Claimant's case derives from the fact that the rescue effort took place during working hours for which she was paid by the employer. See *Nilsson v. Nepi Bros.*, 138 Pa. Superior Ct. 107, 9 A.2d 912 (1939), *aff'd.*, 338 Pa. 561, 14 A.2d 75 (1940).[4]

Furthermore, we consider it to be of no significance whether the car which claimant was pushing was in the lot or on the exit driveway, since it has long been established that "premises of the employer" includes avenues of ingress and egress which are neces-

---

[4] The testimony is uncontradicted that the employees including Claimant started work at 8:00 A.M., left about 2 P.M., and were paid until 5:00 P.M. on the date of the injury. Claimant testified:

Q. How long were you paid that day?

A. I was paid until 5 o'clock. I was considered still clocked in, and I was filed 8:00 A.M. to 5:00 P.M. o'clock on the payroll. We were all paid, all of us girls were informed. Although we had to leave early on account of the weather conditions, we would still be paid for the day, so we were still clocked in.

sary and are provided by the employer for its employees to go to and from public highways to the place of employment. *Fashion Hosiery Shops v. Workmen's Compensation Appeal Board*, 55 Pa. Commonwealth Ct. 465, 423 A.2d 792 (1980); *Schofield v. Workmen's Compensation Appeal Board*, 39 Pa. Commonwealth Ct. 282, 395 A.2d 328 (1978).

Finally, it should be noted that emergency circumstances may provide employment status. *Butrin v. Manion Steel Barrel Co.*, 361 Pa. 166, 63 A.2d 345 (1949).

We find clearly inapposite the case of *Ofcansky v. Workmen's Compensation Appeal Board*, 69 Pa. Commonwealth Ct. 249, 450 A.2d 806 (1982), relied upon by the Board. In that case a fellow employee of Ofcansky had agreed to drive him home from work on a regular basis. On a night when a ride was unavailable they walked home and Ofcansky was struck by an automobile on a public highway suffering injuries for which he sought compensation.

Accordingly, since the Board erred as a matter of law by concluding that Claimant's injuries were not sustained on the premises of the employer, we shall reverse and remand for additional findings, with or without additional hearings, on the questions of the period and extent of Claimant's disability.

### Order

Now, January 4, 1984, the order of the Workmen's Compensation Appeal Board at No. A-82252, dated December 16, 1982, is reversed, and the record in this case is hereby remanded to the Workmen's Compensation Appeal Board for further proceedings not inconsistent with the opinion above. Jurisdiction relinquished.

Judge John A. MacPhail dissents.