Judith P. ORTT, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (PPL SERVICES CORP.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 21, 2005.
Decided April 27, 2005.
Reargument Denied June 20, 2005.

---

Ronald T. Tomasko and Michael A. Koranda, Harrisburg, for petitioner.

Anthony P. Salvino, Allentown, for respondent.

BEFORE: COLINS, President Judge, and PELLEGRINI, J., and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.[1]

Judith P. Ortt (Claimant) appeals an order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Worker's Compensation Judge (WCJ) denying Claimant's claim and penalty petitions and finding that Claimant was not entitled to benefits because her injury did not occur on the premises of PPL Services (Employer) as required by Section 301(c)(1) of the Workers' Compensation Act.[2]

While at work, Claimant parks her car at the Colonial Parking Lot. Employer does not own the Colonial Parking Lot where the injury occurred, although it does own four other parking lots for employee parking. Instead, Employer and Colonial Parking have a lease agreement whereby Colonial Parking leases about 174 spaces to Employer; the remaining parking spaces (a majority) are open to the general public. Employer gives its employees the option to rent spaces at the Colonial Parking Lot at reduced cost (compared to the price Colonial Parking offers to members of the general public), but employees are not required to rent these parking spaces. Employer has at least three other lease arrangements of a similar kind to the one with Colonial Parking. In addition, Employer provides no security patrol for the Colonial Parking Lot, and Colonial Parking, Inc. specifically agreed in the lease to be responsible for maintaining the premises of the lot, which includes the removal of snow and ice.

After working an overtime shift on January 3, 2001, Claimant left work shortly

---

1. This matter was reassigned to the author on April 5, 2005.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(a).

before 6:00 p.m. and exited Employer's building. Her car was parked at the Colonial Parking Lot about a block from Employer's building. The parking lot was covered with ice and snow. As she entered the icy area, Claimant slipped on the ice and fell forward, sustaining injuries all over her body. She managed to drive home, and she informed her supervisors and Colonial Parking that evening about her fall. Claimant filed a claim petition alleging that she sustained injuries as a result of the slip and fall as well as a penalty petition alleging that Employer violated the Act by failing to accept or deny liability for her work-related injury within 21 days after receiving notice of the injury.

In support of the petitions, Claimant testified and presented documentary evidence. Claimant also presented the testimony of one fact witness and the deposition testimony of Charles C. Norelli, M.D. In opposition to the petitions, Employer presented the testimony of fact witnesses and the deposition testimony of Wilhelmina C. Korevarr, M.D., as well as documentary evidence. Based on all the evidence presented, the WCJ made the following relevant findings of fact.

3. [Claimant] testified that she worked overtime on January 3, 2001 and left work shortly before 6:00 p.m. [Claimant] exited [Employer's] building on Ninth Street and walked approximately one block to Court Street to where [her] car was parked at Colonial Parking. As [Claimant] entered this ice and snow [covered] parking lot, she fell forward when she slipped on the ice. [Claimant] managed to enter her car and drive home. [Claimant] call (sic) her supervisor, Tracy Schuler, the same evening, to advise her of the fall. [Claimant] left a message on Ms. Schuler's voice mail. [Claimant] then called Colonial Parking to report her fall.

4. [Employer] presented the testimony of Cheryl Diehl who testified that employees of [Employer] may participate in the parking program provided by [Employer], however such participation was optional. If the employee chooses to participate in the parking program, the employees receive discount of the normal rate charged by Colonial Parking and other private parking lots.

5. [Employer] submitted a lease agreement entered between Colonial Parking, Inc. [and Employer] on January 21, 1999. Pursuant to the terms of that lease agreement, Colonial Parking, Inc. was responsible for maintaining the premises of the parking lot including removal of snow and ice.

6. Neither party disputed that the parking lot where [Claimant] parked her car was a private lot owned by Colonial Parking, Inc. In addition, neither party disputed that Colonial Parking made one hundred and seventy four parking spaces available to [Employer], however the balance of the spaces contained in the lot were available to the general public.

7. Neither party disputed that when [Claimant] exited [Employer's] building at approximately 6:00 p.m., she was walking to her car to travel to her home.

8. [Employer] did not operate or control the premises owned by Colonial Parking.

9. The parking lot where [Claimant] parked her car was not used exclusively by [Employer's] employees.

10. [Claimant] had a choice whether to park at Colonial Parking and was not mandated to park in that lot.

11. The parking lot used by Claimant was located approximately one block away from [Employer's] place of business and thus was not so connected with

[Employer's] business as to form an integral part of that business.

12. [Claimant] was not furthering [Employer's] business when she was traveling from her place of employment to go home at the end of her overtime shift.

13. [Claimant] was not in the course and scope of her employment with [Employer] at the time of her fall on January 3, 2001.

14. In that this court has determined that [Claimant] was not in the course and scope of her employment at the time of her fall on January 3, 2001, it is not necessary for this court to address the balance of the evidence submitted by the parties.

Based on these findings, the WCJ denied both of Claimant's petitions, reasoning that Claimant failed to sustain her burden of proving that she was in the course and scope of her employment at the time of the slip and fall. The Board affirmed, and this appeal followed.[3]

■ Claimant contends that the WCJ erred as a matter of law in determining that she was not injured in the course and scope of her employment when she slipped and fell on an ice and snow covered parking lot which was leased by Employer. First, Claimant argues that Employer had an exclusive lease on that portion of the parking lot where the injury occurred and had caused that area to be used by Claimant and other employees as an employee parking lot; therefore Claimant's injury clearly occurred on Employer's premises. Second, Claimant argues that because her injury occurred while she was attempting to leave work immediately after complet-

ing an overtime shift, her presence on the parking lot was a necessary part of her employment. Finally, Claimant contends that because her injury was caused by an accumulation of snow and ice on the parking lot, her injury was caused by a condition of Employer's premises.

■ Where a claimant is not actually engaged in the furtherance of an employer's business or affairs (as no party seems to dispute in this case), the claimant must satisfy the following elements in order to receive benefits for an alleged work-related injury: (1) the injury must have occurred on the employer's premises; (2) the employee's presence thereon was required by the nature of his or her employment; and (3) the injury was caused by the condition of the premises or by the operation of the employer's business thereon. *Markle v. Workers' Compensation Appeal Board (Bucknell University)*, 785 A.2d 151, 153 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 729, 797 A.2d 918 (2002). The term "premises," as contemplated by Section 301(c)(1) of the Act, means that the area where the injury occurred was owned, leased, or controlled by the employer to a degree where that property could be considered an integral part of the employer's business. *See, e.g., Fashion Hosiery Shops v. Workmen's Compensation Appeal Board (Transworld Airlines)*, 55 Pa.Cmwlth. 465, 423 A.2d 792 (1980); *Robinson v. Y.W.C.A.*, 215 Pa.Super. 19, 257 A.2d 690 (1969).

The Colonial Parking Lot where Claimant slipped and fell could not be considered an integral part of Employer's business because parking in that lot was

---

**3.** Our review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of appeal board procedures, and whether necessary findings of fact are supported by sub-

stantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

purely optional, not required or "integral" to Claimant's employment. Furthermore, while Employer may have reserved those spaces from Colonial Parking, Inc. for the benefit of its employees, Claimant and other employees, if they chose to participate in the optional parking program, were responsible for paying for that parking spot at least in part. Stated differently, the payment by Employer to reserve a spot for its Employees, who had the option of getting a parking spot based on availability, was at most a mere benefit of employment, no different than an agreement by an employer to pay portions of health insurance costs of an employee. Under Claimant's theory, if an employee would get injured at a hospital where an employer has an agreement to pay for medical expenses in part, the hospital would become the Employer's "premises" for purposes of Section 301(c)(1).

Because the injury suffered by Claimant occurred on a private parking lot, owned and operated by Colonial Parking, Inc., which was responsible for the snow and ice removal that resulted in Claimant's slip and fall, the order of the Board is affirmed.

### ORDER

AND NOW, this 27th day of April, 2005, the order of the Workers' Compensation Appeal Board in the above captioned matter is affirmed.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent. Whether a claimant's injury occurred in the course of his or her employment as defined by Section 301(c)(1) of the Workers' Compensation Act[1] (Act), is a question of law subject to our plenary review. *Williams v. Workers' Compensation Appeal Board (City of Philadelphia)*, 850 A.2d 37 (Pa.Cmwlth.2004). Section 301(c)(1) provides that compensable injuries include, *inter alia:*

All injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being required by the nature of his employment.

As this Court has recently stated:

Case law has now well established that an employee not engaged in the furtherance of the business or affairs of the employer must satisfy three conditions under the Act in order for her injury to be "in the course of employment." *Dana Corp. v. Workmen's Compensation Appeal Board (Gearhart)*, 120 Pa.Cmwlth. 277, 548 A.2d 669 (1988), *petition for allowance of appeal denied*, 522 Pa. 606, 562 A.2d 828 (1989). The Act dictates that: (1) the injury must have occurred on the employer's premises; (2) the employee's presence thereon was required by the nature of his employment; and (3) the injury was caused by the condition of the premises or by the operation of the employer's business thereon.

*Markle v. Workers' Compensation Appeal Board (Bucknell University)*, 785 A.2d 151, 153 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 729, 797 A.2d 918 (2002).

Herein, the WCJ found, and the Board affirmed, that none of the three elements set forth in *Markle* were proven by Claimant. However, upon review, I disagree

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(a).

and would hold that Claimant was acting within the course of her employment at the time of her injury.

First, contrary to the majority's holding, I believe that Claimant's injury occurred on Employer's premises. The majority concludes that Employer's payment to reserve a spot for its employees was at most a mere benefit of employment because it was an "optional" program and the employees were responsible for paying for the parking spot at least in part. The majority concludes further that this "benefit" is no different than an agreement by an employer to pay portions of health insurance costs of an employee. However, I believe that the majority's conclusions, based on the fact that the parking program was optional, are tenuous at best. I would propose that all employer provided parking programs are, to some extent, optional. The Act is to be construed liberally and Claimant's decision to take advantage of Employer provided parking, whether optional or not, should not be to her detriment.

In this case, Employer entered into a lease with Colonial Parking to provide automobile parking spaces to its employees, including Claimant. Reproduced Record (R.R.) at 240a. The terms of the lease provided that the number of parking spaces and the rates for the parking spaces for Employer's employees shall be given out by Employer's authorized representatives in its Corporate Security Department. *Id.* The terms of the lease further provided that Employer would provide proper identification forms to its employees for presentation to Colonial Parking and that Employer shall have 24 hour, 7 day a week use of the parking spaces during the term of the agreement. *Id.* at 240a–241a. In addition, Employer's fact witness, Cheryl Diehl, testified that Employer pays the rates for the parking

spaces and assigns the spaces to interested employees who pay half the parking expense through payroll deduction. *Id.* at 83a. Ms. Diehl also testified that Employer owns four parking lots for employee parking and leases additional spaces from three independently owned parking lots, which includes the Colonial Parking lot. *Id.* at 85a.

The fact that Employer did not own the lot in which its employees parked or that the parking lot was not contiguous to Employer's building is of no moment. Case law has previously held that parking lots leased by employers for their employees constitute "premises" of the employer. *See e.g. Carl v. Workmen's Compensation Appeal Board (G.H. Delp Company)*, 79 Pa.Cmwlth.332, 469 A.2d 347 (1984) (The lease and other circumstances established that the claimant had parked her car in an authorized parking lot which constituted "premises" of the employer.). Since the Act is not premised upon the wrongdoing or negligence of the employer, but rather is bottomed upon the employment relationship, there is no necessity to require a finding of ownership or control. *Epler v. North American Rockwell Corporation*, 482 Pa. 391, 393 A.2d 1163 (1978); *See also Williams*, 850 A.2d at 39 ("Our courts have long held that an employer's premises includes reasonable means of access to the workplace, whether or not the specific piece of land is owned by the employer".).

Thus, I would hold that Claimant was injured on Employer's premises. I would hold further that that Claimant was required to be on Employer's premises and that her injury was caused by the condition of the premises.

As stated in *Epler*, if the employee was in the area where the injury was sustained directly because of his or her employment, the injury is compensable. *Epler*, 482 Pa. at 397, 393 A.2d at 1167. In *Williams*, this

Court pointed out that case law clearly establishes that an employee's presence in the parking lot immediately before or after he or she arrives at or departs from the workplace is required by the nature of his employment. *Williams*, 850 A.2d at 39.

Herein, Claimant was in the Colonial Parking lot at the time of her injury because she had just left work and was walking to her car which was parked in a space provided to her by Employer through its lease with Colonial Parking. Accordingly, she was in the parking lot directly because of her employment. Moreover, the fact that she did not have to park there is irrelevant. Again, the Act is to be construed liberally and Claimant's decision to take advantage of Employer provided parking should not be to her detriment.

Finally, Claimant's injury was caused by the condition of the premises. Pursuant to Claimant's uncontroverted testimony, the parking lot was snow and ice covered at the time of Claimant's injury and it was that actual physical condition of the parking lot that caused her to fall and sustain an injury.

Accordingly, I would reverse the Board's order and remand the matter with instructions to further remand to the WCJ for findings with respect to the balance of the evidence presented by the parties and a determination of the amount of compensation benefits, if any, which are payable in respect of Claimant's January 3, 2001 injury.