IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maurice Stewart,                    :
                    Petitioner      :
                                    :
        v.                          :    No. 812 C.D. 2020
                                    :    Argued: March 18, 2021
Workers' Compensation Appeal Board  :
(Bravo Group Services, Inc.),       :
                    Respondent      :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


OPINION
BY JUDGE LEAVITT                                    FILED: July 2, 2021


        Maurice Stewart (Claimant) petitions for review of an adjudication of

the Workers' Compensation Appeal Board (Board) that denied his claim petition.  In

doing so, the Board affirmed the decision of the Workers' Compensation Judge

(WCJ) that Claimant was not acting in the course and scope of his employment at

the time of his injury.  Claimant asserts that the Board erred.  He contends that his

fall from a shuttle, which took him from the train station to the building where he

worked, occurred on his employer's premises and, thus, was work-related.  We

agree.  Accordingly, we reverse and remand the matter for further proceedings.

## Background

        Claimant's injury occurred at the Glaxo Smith Kline building in King

of Prussia, Pennsylvania, where Claimant worked as an employee of Bravo Group

Services, Inc. (Employer), which provides janitorial services to Smith Kline.  On

April 6, 2018, Claimant filed a claim petition pursuant to the Workers'

Compensation Act (Act),[1] alleging that he sustained an injury to his left foot and ankle on March 22, 2018, while exiting a shuttle van in front of the Smith Kline building before beginning his shift. Certified Record (C.R.), Item 2, at 2. Employer denied all allegations, and hearings were held before the WCJ.

Claimant testified by deposition on July 13, 2018. He stated that Employer assigned him to the Smith Kline building, where he worked from 5:00 p.m. to 10:00 p.m. His job duties included sweeping, mopping, and removing trash from the laboratories. He normally arrived at work around 4:30 p.m., read the newspaper and had a snack before clocking in. Employer did not allow him to clock in until five minutes before 5:00 p.m.

Claimant commuted to work each day by public transportation. At Gulph Mills Station, he took a shuttle operated by Smith Kline to his assigned building. At the end of his shift, Claimant returned to the Gulph Mills Station on a shuttle that was provided and operated by Employer.

Claimant testified to the work incident on March 22, 2018, as follows:

[Counsel]: Tell us what happened…. Let's be real specific. You arrive[d] at Smith Kline?

[Claimant]: I arrived at Smith Kline.

[Counsel]: Where does the shuttle exactly drop you off, and how far from the building?

[Claimant]: They got revolving doors, maybe five feet. The shuttle pulls up in the lot. You walk right there, and right there would be the revolving doors.

[Counsel]: Just a few feet?

[Claimant]: A few feet.

[Counsel]: What happened when you were getting off the van?

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

[Claimant]: I stepped up, stepped down, my [left] foot twisted, and I just fell….

\*\*\*

[Counsel]: What was the weather that day?

[Claimant]: It was wet out, but I don't really think that it was an accident. I just slipped and fell.

\*\*\*

[Counsel]: When you fell, where did you land?

[Claimant]: On the ground.

Notes of Testimony, 7/13/2018, at 16-17 (N.T.__). The incident occurred at 4:32 p.m., before Claimant had clocked in for work. Claimant was taken to the emergency room, where he was diagnosed with a fracture and given a boot to wear on his injured foot.

On cross-examination, Claimant clarified that "[w]hen [he] was stepping out of the van, [he] hit the ground. [His] feet never really touched the ground." N.T. 34. Claimant acknowledged that he was not required to take the Smith Kline shuttle to work, and he was not paid by Employer for his time traveling to work.

Claimant testified again in person before the WCJ on November 6, 2018. He stated that the Smith Kline shuttle took him from the Gulph Mills Station to the "front entrance" of the "main building." N.T., 11/6/2018, at 10. When he was "getting off the shuttle, [he] was sitting forward, turned to the right to get off and when [he] went to turn around to [] step down, [his] body weight, [he] fell forward. Twisted [his left] foot." N.T. 11. Claimant stated that "when [he] hit the steps [of the shuttle,] [he] went straight to the ground." N.T. 12.

3

Employer submitted a medical report of Dr. Steven Boc, who performed an independent medical evaluation of Claimant on August 21, 2018. Based upon the history provided by Claimant, the review of the medical records, and the physical examination, Dr. Boc opined that Claimant sustained an ankle sprain with a fifth metatarsal fracture as a result of the March 22, 2018, incident, but he had fully recovered at the time of the evaluation.

### WCJ's Decision and the Board's Adjudication

On September 6, 2019, the WCJ denied the claim petition, concluding that Claimant was not injured in the course and scope of his employment. The WCJ accepted Claimant's testimony as credible and found that Claimant was injured leaving the shuttle, which had stopped in front of the building where he worked. The WCJ concluded, however, that the shuttle was not part of Employer's "premises" for purposes of Section 301(c)(1) of the Act, 77 P.S. §411(1), because Employer had "no connection whatsoever with its employees' means with which they travel to work" and did not own or operate the shuttle. WCJ Decision at 6; Findings of Fact Nos. 17, 19. The WCJ also credited Dr. Boc's testimony and found that Claimant had fully recovered from the ankle sprain and fracture as of the date of the independent medical evaluation.

Claimant appealed to the Board, which affirmed the WCJ's decision. The Board held that because Claimant sustained an injury while "commuting to work on a shuttle bus that was not owned or controlled by [Employer]," his injury was not compensable under the so-called "coming and going" rule. Board Adjudication, 7/22/2020, at 4 (citing *Bensing v. Workers' Compensation Appeal Board (James D. Morrissey, Inc.)*, 830 A.2d 1075 (Pa. Cmwlth. 2003)). The Board emphasized that

4

the Smith Kline shuttle picked up Claimant at a public transportation station and reasoned that Claimant could have used "any number of modes of transportation to commute to the building." Board Adjudication at 5.

Claimant petitioned for this Court's review.

**Appeal**

On appeal,[2] Claimant raises one issue, *i.e.*, that the Board erred in concluding that his injury did not occur in the course and scope of his employment. He argues that the shuttle had arrived at the Smith Kline building when he stepped off and twisted his left foot. The shuttle was not operated by Employer, but it constituted "a reasonable means of access [] to the building where he performed his work" and, thus, became part of Employer's "premises." Claimant Brief at 16. Further, this means of access was encouraged by Employer, which provided Claimant transportation back to the Gulph Mills Station at the end of his shift in a van operated by Employer.

Employer counters that under the coming and going rule, injuries sustained while an employee is traveling to and from his place of employment are not compensable. Employer contends that a "reasonable means of access" to the workplace does not cover "every means, pathway, route or instrument of travel by or in which an employee chooses to approach" the workplace. Employer Brief at 16. To grant compensation to Claimant would render the coming and going rule meaningless. Alternatively, Employer asserts that Claimant's injury was not caused

---

[2] This Court's review of a Board adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001).

by the condition of the premises or by operation of Employer's business, as required by Section 301(c)(1) of the Act. Rather, Claimant "simply tripped over his own feet." Employer Brief at 19.

Employer further contends that the Ridesharing Arrangements Act (Ridesharing Act)[3] precludes Claimant from collecting workers' compensation benefits. Acknowledging that this issue was not raised prior to this appeal, Employer contends that this issue is jurisdictional and may be raised at any time.

### I. Statute and Case Law

To be eligible for compensation, an injured employee must establish that his injury occurred in the course of employment. Section 301(c)(1) of the Act states, in pertinent part, as follows:

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto.… The term "*injury arising in the course of his employment*," as used in this article … shall include all [] injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and *shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.*

77 P.S. §411(1) (emphasis added).

---

[3] Act of December 14, 1982, P.L. 1211, *as amended*, 55 P.S. §§695.1.1-695.9.

6

Case law precedent has construed Section 301(c)(1) to mean that an injury arises in the course of employment in two distinct situations. First, an injury is compensable if it occurs while the claimant is furthering the business or affairs of his employer, without regard to where the injury occurs. Second, even if the claimant is not furthering the employer's business at the time of the injury, the claimant is entitled to compensation if he

> (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on his employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Workmen's Compensation Appeal Board (Slaugenhaupt) v. United States Steel Corporation*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977). Whether an employee is injured in the course of employment is a question of law to be determined on the basis of the WCJ's findings of fact. *Markle v. Workers' Compensation Appeal Board (Bucknell University)*, 785 A.2d 151, 153 (Pa. Cmwlth. 2001).

There is no dispute that Claimant was not furthering Employer's business when he was injured. Accordingly, Claimant's appeal turns on whether his injury took place on Employer's premises. As such, the three-prong test in *Slaugenhaupt* governs.

The first prong of the test requires us to assess whether the site of the accident was "so connected with the [employer's] business or operating premises as to form an integral part thereof." *US Airways, Inc. v. Workers' Compensation Appeal Board (Bockelman)*, 221 A.3d 171, 177 (Pa. 2019) (*Bockelman II*) (citing

7

*Epler v. North American Rockwell Corporation*, 393 A.2d 1163, 1165 (Pa. 1978)).[4] "[T]he critical factor is not the employer's title to or control over the area, but rather the fact that [the employer] had caused the area to be used by [employees] in performance of their assigned tasks." *Id.* (citing *Epler*, 393 A.2d at 1167). "Parking lots, public streets, and common areas in multi-unit office buildings, for instance, may be considered part of the employer's premises if they are integral to the employer's workplace or constitute a reasonable means of ingress to or egress from the workplace." *Id.* at 176 (citing *Epler*, 393 A.2d at 1165).

The second prong of the *Slaugenhaupt* test requires us to determine whether the employer required the claimant to be present on the premises. The presence requirement includes the employee's entry to and exit from the workspace during a reasonable period of time before or after the employee's shift. *Allegheny Ludlum Corporation v. Workers' Compensation Appeal Board (Hines)*, 913 A.2d 345, 349 (Pa. Cmwlth. 2006) (walking along an authorized route to workspace was required by the nature of the claimant's work).

The third prong of the *Slaugenhaupt* test requires us to examine whether the injury was caused by the condition of the premises. We have long ago "rejected the assertion that an employee must show some faulty condition or negligent operation[] in order to receive compensation for injuries sustained while on the employer's premises." *Newhouse v. Workmen's Compensation Appeal Board (Harris Cleaning Service, Inc.)*, 530 A.2d 545, 547 (Pa. Cmwlth. 1987). Indeed, "the employer's lack of fault or negligence relative to the injury is of no

---

[4] Our Supreme Court in *Bockelman II* affirmed this Court's decision in *US Airways, Inc. v. Workers' Compensation Appeal Board (Bockelman)*, 179 A.3d 1177 (Pa. Cmwlth. 2018) (*Bockelman I*).

8

consequence" when considering the condition of the employer's premises. *Fashion Hosiery Shops v. Workmen's Compensation Appeal Board*, 423 A.2d 792, 797 (Pa. Cmwlth. 1980). Further, "the condition of the premises or operation of employer's affairs need not be the immediate or direct cause of claimant's injury; it must simply play some role in the causative chain." *Williams v. Workers' Compensation Appeal Board (City of Philadelphia)*, 850 A.2d 37, 40 (Pa. Cmwlth. 2004) (injury that occurred when the claimant struck his head entering the employer's van in parking lot was compensable). *Cf. Anzese v. Workmen's Compensation Appeal Board (Strick Corporation)*, 385 A.2d 625 (Pa. Cmwlth. 1978) (death benefits denied when an employee was struck by lightning while leaving the employer's premises on his motorcycle).

In *Slaugenhaupt*, 376 A.2d 271, an employee had an epileptic seizure while driving his car in the employer's parking lot before the start of his shift. As a result of the seizure, the employee lost control of his car and hit a concrete abutment on the employer's property, causing fatal injuries. Although epilepsy caused the accident, the employee's death resulted from "the force of the car striking the concrete abutment." *Id.* at 273. This Court held that the employee's death was compensable under Section 301(c)(1) of the Act because the concrete abutment was a condition of the premises that contributed to the employee's death.

In *Epler*, 393 A.2d 1163, our Supreme Court granted benefits to a claimant whose husband, shortly after completing his night shift, was killed while crossing a public street between the employer's parking lot and the building where he worked. The Supreme Court held that the street constituted the employer's premises under Section 301(c)(1) of the Act, explaining:

9

> Where an entrance or an exit is provided by the employer for his employes, or where such exit or entrance is available and intended for use, or is the usual means of ingress or egress … to the [employer's] place of business; ... then such entrance or exit, whether located on property under the control of the employer or not, is part of the employer's "premises." It therefore follows that it should not be significant that a portion of the area designated by the employer for egress or ingress is not located upon land owned by the employer.

*Id*. at 1166 (internal quotations omitted). *Epler* did not explicitly state that the employee's death was caused by the condition of the premises. This Court has observed, nevertheless, that "the danger inherent in crossing a public street can be a condition of the premises where a street is held to be part of the premises." *Dana Corporation v. Workmen's Compensation Appeal Board (Gearhart)*, 548 A.2d 669, 671 (Pa. Cmwlth. 1988).

In *Fashion Hosiery Shops*, 423 A.2d 792, this Court held that the claimant was on the employer's premises when she slipped and fell on an icy sidewalk outside the building where she worked. The employer conducted its business on the first floor of the building, but it did not own, lease, or control the walkway upon which the claimant fell. The employer argued that the claimant sustained an "on-the-way-to-work" injury, which was not compensable under the Act. *Id*. at 794. The building had three separate entrances; the claimant could have chosen a different entrance; and the employer did not instruct her to use any specific one. We rejected this argument, explaining as follows:

> [T]he claimant was injured on an entranceway that was available and intended for her use; and as such, it constituted part of the employer's premises, regardless of its not being owned or controlled by the employer. Nor does the availability of alternative entrances nullify that conclusion. *Each* of the three available and intended ways of ingress to [the workplace] was a

10

part of [the employer's] "premises" for purposes of Section 301(c) of the [Act]. In terms of the *Epler* case, *it can be said that [the claimant] was in the area where the injury was sustained directly because of her employment*, and that the employer at least induced her to use that area by making it a way of ingress to the place of work.

*Id*. at 797 (internal citations omitted) (emphasis added). Accordingly, we held that the claimant sustained her injury on the employer's premises. Notably, the claimant's injury satisfied the second prong of *Slaugenhaupt* because it occurred at a reasonable time before her shift, *i.e.*, 15 to 30 minutes before she was scheduled to work. *Id*.

In *Newhouse*, 530 A.2d 545, the claimant fell from the hood of a co-worker's car after his shift had ended, as the car drove from the factory on an access road to the exit gate. The claimant fell because the driver made an unexpected turn when he found the exit gate closed. The referee found that the employer had assigned the claimant to work at the factory to provide janitorial services; the claimant routinely worked there; and the access road provided reasonable access to the public road used by the claimant to walk to and from work. We concluded that "the combination of the closed gate and the bend in the road constituted a condition of the premises" under Section 301(c)(1) of the Act that caused the claimant's injuries. *Id*. at 547. The claimant's "fault and negligence have no bearing on the application of the Act." *Id.*

By contrast, in *Mansfield Brothers Painting v. Workers' Compensation Appeal Board (German)*, 72 A.3d 842 (Pa. Cmwlth. 2013), this Court denied benefits to a claimant who was assigned by his employer to paint a dormitory at the University of Pennsylvania and fell on a pathway while walking to the train station

11

after work.  The pathway was located across the street from the dormitory and over 150 feet away.  This Court held that the pathway did not constitute the employer's premises.  The employer did not cause the claimant to use any part of the campus other than the work site at the dormitory.  Once the claimant left his work site, he could have gone in any direction toward the train station.

A reasonable means of ingress or egress can include a moving vehicle. In *Bockelman I*, 179 A.3d 1177, the claimant, a flight attendant, slipped and fell on a shuttle bus taking her from the Philadelphia airport terminal to an employee parking lot after her shift ended.  The Philadelphia Division of Aviation owned, operated, and maintained the parking lots designated for airport and airline employees.  The Board concluded that the claimant's injury arose in the course of her employment, and this Court affirmed.  We held that the shuttle bus provided a reasonable means of access to the workplace and, thus, constituted an integral part of the employer's premises.  The employer understood that employees who drove to work invariably boarded the shuttle bus to return to their vehicle at the end of their shift.  *Id.* at 1182.

On appeal, the Supreme Court affirmed and emphasized that "the critical factor is not the employer's title to or control over the area, but rather the fact that [the employer] had caused the area to be used by [employees] in performance of their assigned tasks." *Bockelman II*, 221 A.3d at 179 (citing *Epler*, 393 A.2d at 1167).  The Supreme Court in *Bockelman II* reasoned as follows:

> As part of [the employer's] business relationship with the airport, [the employer] clearly was aware that the Division of Aviation would make employee parking available to the airline's employees. *Indeed, the evidence presented to the WCJ suggests that, had the Division not done so, [the employer] would have*

12

*been obligated under its collective bargaining agreement with the Association of Flight Attendants to reimburse flight attendants like [the claimant] for the cost of airport parking.* Additionally, [the employer] was required to (and did) obtain [] badges–which could then be used to enter the Division's employee parking lots–for all of its Philadelphia-based flight attendants. Given these facts, we have little difficulty concluding that the parking lot and shuttle were connected with, and thus integral to, [the employer's] business operations at the [airport].

*Bockelman II*, 221 A.3d at 179 (emphasis added).[5]

With this summary of the principles applicable to the question of whether an injury has occurred on the employer's premises, we turn to the instant appeal.

## II. Analysis

In the case *sub judice*, the Board denied compensation benefits for the stated reason that Claimant sustained an injury while "commuting to work on the shuttle." Board Adjudication, 7/22/2020, at 4. Under the coming and going rule, injuries sustained while the employee is traveling to or from his place of employment are not compensable because the employee is neither on the employer's premises nor engaged in the furtherance of the employer's affairs.[6] *Peer v. Workmen's*

---

[5] The Supreme Court pointed out that this Court's understanding of *Epler* may have led to the mistaken belief in several decisions that a parking area cannot be integral to an employer's premises if workers are given a choice whether or not to use it. The Supreme Court clarified that this choice was not dispositive. *See Bockelman II*, 221 A.3d at 177-79 (discussing *PPL v. Workers' Compensation Appeal Board (Kloss)*, 92 A.3d 1276 (Pa. Cmwlth. 2014); *Waronsky v. Workers' Compensation Appeal Board (Mellon Bank)*, 958 A.2d 1118 (Pa. Cmwlth. 2008); *Ortt v. Workers' Compensation Appeal Board (PPL Services Corporation)*, 874 A.2d 1264 (Pa. Cmwlth. 2005)).

[6] There are four exceptions to the coming and going rule. An injury sustained during an employee's commute to or from work is compensable if any of the following apply:

    (1) the employment contract included transportation to and from work;

    (2) the employee has no fixed place of work;

    (3) the employee is on special assignment for the employer; or

13

*Compensation Appeal Board (B & W Construction)*, 503 A.2d 1096, 1098 (Pa. Cmwlth. 1986). The Board emphasized that Employer did not own, maintain, or control the shuttle van that Claimant used to travel from the train station to the building where he worked. Further, unlike the flight attendant in *Bockelman II*, Claimant could have used different "modes of transportation to commute to the building." Board Adjudication at 5.

The WCJ found that at the time of his injury, Claimant had already arrived at the Smith Kline building where he worked. Claimant testified that the shuttle took him from the Gulph Mills Station to the "front entrance" of the "main building," where it "pull[ed] up in the lot" and stopped "[a] few feet" from the "revolving doors" of the building. N.T., 7/13/2018, at 16-17; N.T., 11/6/2018, at 10. The WCJ credited this testimony and found that Claimant sustained an injury while getting off the shuttle van. Although Employer had no control over its employees' choice of commute, Claimant had already arrived at the building at the time of his injury. He was no longer commuting. The Board erred in its application of the coming and going rule.

Claimant slipped and fell a few feet from the front entrance of the building, which was the place where "the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment." Section 301(c)(1) of the Act, 77 P.S. §411(1). The front entrance of the building was a reasonable means to access Employer's premises. Further, Employer offered no evidence that there was any other way for Claimant to enter the

---

(4) special circumstances are such that the employee was furthering the business of the employer.

*Bensing*, 830 A.2d at 1078.

building. Claimant "was in the area where the injury was sustained directly because of [his] employment." *Fashion Hosiery Shops*, 423 A.2d at 797. Claimant's injury occurred at 4:32 p.m., 28 minutes before the start of his shift. As we held in *Fashion Hosiery Shops*, an injury that occurs 15 to 30 minutes before starting work satisfies the second prong in *Slaugenhaupt.*

The mechanism of Claimant's injury, *i.e.*, that he hit the steps of the shuttle as he fell to the ground, is not dispositive of the first prong of the *Slaugenhaupt* test, *i.e.*, whether the injury occurred on Employer's premises. The claimant in *Newhouse*, 530 A.2d 545, fell from the hood of his co-worker's car while it was travelling on the access road from the factory, and the access road was a reasonable means of egress from the work site. Likewise, here, Claimant's accident took place in an area integral to Employer's workplace, a few feet from the doors to the building where he worked. This area constituted a reasonable means of ingress to the work site. *Epler*, 393 A.2d at 1165. Further, Claimant was required to be present at the Smith Kline building by the nature of his employment, and this required presence included the 15-to-30-minute period of time prior to the start of his shift.

This leaves the third prong of *Slaugenhaupt*, *i.e.*, whether Claimant's injuries were caused by a condition of the premises. The WCJ found that Claimant slipped and fell forward to the ground while stepping down off the shuttle van and sustained an ankle sprain and fracture. WCJ Decision at 3-4; Findings of Fact Nos. 1(d), 2(d). In *Slaugenhaupt*, we held that the concrete abutment was a condition of the employer's premises that contributed to the employee's death, although the claimant lost control of his car due to an epileptic seizure. Likewise, here, the ground

15

where Claimant landed constituted a condition of the premises that contributed to Claimant's injuries. Claimant may have tripped over his own feet while exiting the shuttle van, but the "concepts of fault and negligence have no bearing on the application of the Act." *Newhouse*, 530 A.2d at 547. The critical inquiry under the third prong of the *Slaugenhaupt* test is whether the condition of the premises or operation of the employer's affairs thereon "play[ed] some role in the causative chain" of the claimant's injury. *Williams*, 850 A.2d at 40. We conclude that the condition of the premises played some role in the causative chain of Claimant's injury.

### Conclusion

For the foregoing reasons, we hold that the Board erred in concluding that Claimant's compensation claim was barred under the coming and going rule. Claimant sustained an injury upon his arrival at the front entrance of the Smith Kline building to begin his shift. Claimant was required by the nature of his employment to be present in the area where he was injured because he was entering the workplace a reasonable time before his shift. The ground where Claimant fell constituted a condition of the premises that contributed to Claimant's injuries.

We hold that Claimant has satisfied the three-prong test set forth in *Slaugenhaupt*, 376 A.2d at 273, to prove that he sustained injuries in the course of employment under Section 301(c)(1) of the Act. Accordingly, we reverse the Board's adjudication and remand for a determination of the amount of compensation

benefits payable with respect to Claimant's March 22, 2018, injury.[7]

_____

MARY HANNAH LEAVITT, President Judge Emerita

_____

[7] Although Claimant challenged the WCJ's finding that he had fully recovered as of August 21, 2018, at the time of Dr. Boc's independent medical evaluation, before the Board, he did not raise this issue on appeal before this Court. As such, the amount of benefits payable with respect to Claimant's work-related injury, if any, should be limited to a closed period of time ending on August 21, 2018.

We further reject Employer's assertion that the Ridesharing Act precludes Claimant from collecting workers' compensation benefits. Section 3 of the Ridesharing Act provides, in relevant part: "[t]he [] Workers' Compensation Act[] shall not apply to a passenger injured while participating in a ridesharing arrangement between such passenger's place of residence and place of employment." 55 P.S. §695.3. Section 1.2 of the Ridesharing Act defines a "ridesharing arrangement," in pertinent part, as "[a]ny one of the following forms of transportation provided by a ridesharing operator":

> (1) The transportation of not more than 15 passengers where the transportation is incidental to another purpose of the driver who is not engaged in transportation as a business. The term includes a carpool and vanpool used in the transportation of employees to or from their place of employment.
>
> (2) The transportation of employees to or from their place of employment in a motor vehicle owned or operated by their employer.
>
> (3) The transportation of persons in a vehicle designed to hold no more than 15 people and owned or operated by a public agency or nonprofit organization for that agency's clientele or for a program sponsored by the agency.

Added by the Act of July 10, 2015, P.L. 130, 55 P.S. §695.1.2. A "ridesharing operator" is "[t]he person, entity or concern responsible for the existence and continuance of a ridesharing arrangement." *Id.*

Here, the record lacks evidence that Glaxo Smith Kline, the owner of the building, acted as a "ridesharing operator," or that its shuttle operated between the Gulph Mills Station and the workplace constituted a "ridesharing arrangement" as defined in Section 1.2 of the Ridesharing Act. Because the WCJ did not make those findings, we lack the record needed to determine whether the Ridesharing Act precludes Claimant from receiving workers' compensation benefits.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maurice Stewart,                    :
               Petitioner    :
                    :
       v.               :    No. 812 C.D. 2020
                    :
Workers' Compensation Appeal Board  :
(Bravo Group Services, Inc.),    :
           Respondent  :

## **O R D E R**

AND NOW, this 2nd day of July, 2021, the July 22, 2020, order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is hereby REVERSED. The matter is REMANDED to the Board with specific instructions to further REMAND to the Workers' Compensation Judge for a determination as to the amount of any compensation payable as a result of Maurice Stewart's March 22, 2018, injury.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita